**GREAT WESTERN CITIES, INC., a California Corporation, Plaintiff,**

v.

**Mark P. BINSTEIN, Colorado City Lot Owners and Taxpayers Association, and Robert Pfeil, Defendants.**

**No. 78 C 5044.**

United States District Court, N. D. Illinois, E. D.

Aug. 27, 1979.

---

54. Docket Item 67, p. 114; Docket Item 61, par. 16.

55. Docket Item 54, Exh. B.

Samuel Skinner and Charles W. Douglas, Sidley & Austin, Chicago, Ill., Cary B. Lerman and Daniel P. Garcia, Munger, Tolles & Rickershauser, Los Angeles, Cal., for plaintiff.

Mark P. Binstein, pro se.

Stephen G. Seliger, Chicago, Ill., for defendants.

## ORDER

BUA, District Judge.

This is an action by Great Western Cities, Inc., a California land development corporation, seeking to enjoin allegedly illegal solicitation of litigation against GWC and malicious interference with its contract rights. Before this court are plaintiff's motion for preliminary injunction and defendants' motion to be relieved of the effects of Local Civil Rule 22. This rule bears upon the solicitation of litigants in class action suits.

The remaining defendants in this action are Robert Pfeil and the Colorado City Lot Owners and Taxpayers Association, Inc. This Association is an Illinois not-for-profit corporation composed entirely of allegedly defrauded landowners. Its purpose is to inform persons who purchased land in a GWC development called Colorado City that they are the victims of an alleged interstate land fraud, to advise these owners of the potential for instituting a recovery action against GWC, and to seek membership and

membership fees to enable the Association to pursue a recovery against GWC. Robert Pfeil was instrumental in the formation of the association.

Another defendant, Mark P. Binstein, has been removed from this litigation via a consent decree. Plaintiff alleges in its complaint that Mr. Binstein caused the Association to be formed and exerts dominion and control over the actions of the Association. Plaintiff further alleges that the actions of Mr. Binstein in this case are merely part of a long career of wrongful fomentation and solicitation of lawsuits against real estate developers. It is not necessary to consider the merits of these allegations against Mr. Binstein for this court finds that, whatever their prior relationship, the Association is not at the present time dominated and controlled by him. This court is convinced that subsequent to the reorganization of the Association pursuant to court order, (Final Judgment and Consent Decree With Respect to Certain Defendants, *People v. Colorado City Lot Owners and Taxpayers Assoc., Inc.,* No. 78 CH 8291 [Cook Cty, Cir. Ct. January 22, 1979]), the Association is a bona fide and independent organization, fully dominated and controlled by its members and duly elected officials only.

Mr. Robert Pfeil specifically agreed in that order of the Circuit Court to cease from engaging in the management, operation, or control of the Association. Therefore, it appears that the actions which GWC presently seeks to enjoin are solely the actions of the Association which is composed entirely of individuals who allegedly have been defrauded by GWC.

## I. FACTUAL BACKGROUND

In 1967, the plaintiff, Great Western Cities, Inc., acquired 9,600 acres of land in Southern Colorado, which it then subdivided and marketed under the name of "Colorado City" through several wholly-owned subsidiary corporations. These lots were widely advertised and represented to purchasers as prime investments in a fully developed community with a projected population of 50,000 people. Lot purchasers were further led to believe that this community would have sufficient water, sewage, roads and utility service, and that since the lots were appreciating in market value yearly, their resale value would continue to increase.

Approximately 23,000 such lots were purchased from 1967 to the present by people residing in many states throughout the country. Prices for the lots ranged from twenty-five hundred dollars ($2,500.00) to twenty-two thousand dollars ($22,000.00).

Purchasers of these lots claim that instead of an excellent investment in a populous city with roads, water, sewage, and utilities, they wound up with worthless, arid wasteland. There is much evidence to support their claim. At present, there are only approximately 1,200 residents of Colorado City, and property there is not increasing in value but is in fact worth less than its original selling price.

Believing they were defrauded by GWC, many thousands of these lot purchasers sought relief in a variety of ways. One potential avenue of recovery is through the efforts of the Colorado City Lot Owners and Taxpayers Association, Inc.

The purpose of the Colorado City Lot Owners and Taxpayers Association is to enlist the cooperation of many lot owners, particularly those in the Chicago area, in bringing a joint lawsuit against the developers of Colorado City. The genesis of the Association occurred when two Chicago area lot purchasers, James Goebel and Myron Lucyshyn, made contact with Mark Binstein, a land fraud investigator at the suggestion of Robert Pfeil.

Mr. Pfeil, who had similar problems with a land development only thirty miles from Colorado City, knew of the work of Mark Binstein through his involvement in the Pueblo West Association. Pueblo West was an earlier Association organized by Mr. Binstein to solicit individuals to sue a different land development company. The United States District Court for the Southern District of Indiana has enjoined Mark Binstein from further solicitation there and ordered him to pay $43,000 for lot owners' attorneys' fees after a finding that he misused

and misappropriated over $190,000 of funds of the Pueblo West Association. Mr. Binstein has also agreed in a Wisconsin court proceeding to refrain from certain solicitation activities in connection with Pueblo West. Mr. Pfeil testified in behalf of Mark Binstein in Indiana and tried to help him raise money to pay that fine.

Everyone involved in the formation of the Colorado City Association, Goebel, Luchshyn, Binstein, Pfeil, and Attorney Gerald Flynn, attempted to avoid the legal pitfalls of the Pueblo West Association. Defendants contend that Goebel and Lucyshyn organized the Association and that Binstein was merely an employee hired to investigate the Colorado City situation and give reports at five membership meetings which took place at a Holiday Inn near Chicago.

Plaintiff contends that Goebel and Lucyshyn were mere fronts who did not contribute or play an active role in establishing the Association. It alleges that Pfeil and Binstein created, controlled, dominated and financed the Association and that its independence was a sham. It cites a $30,000 financial contribution of Pfeil and Binstein and a wide range of personal services allegedly performed by Binstein in forming the Association. It claims that Binstein made the initial investigation of Colorado City, formulated the membership plan, drafted notices of meetings, membership and voting forms, and a membership fee solicitation letter, met with attorneys who might represent the lot owners against GWC, and rented rooms at the Holiday Inn for membership meetings.

Mark Binstein spoke to over 1,000 Colorado City lot owners at these Holiday Inn meetings. He presented a research report on Colorado City, told them they had been defrauded by GWC, and urged them to join in a lawsuit against GWC through membership in the Association. Membership in the Association cost a minimum of $400 and was limited to people who had not previously settled with GWC and were therefore eligible to sue. Membership fees would be used to initiate lawsuits against GWC for fraud. It appears that presently, approximately 1,200 Chicago area residents who have joined the Association intend to bring an action against GWC in this district court.

These activities caused the Illinois Attorney General to file an action against the Association and its organizers at about the same time as the present action was filed by GWC. *People v. Colorado City Lot Owners and Taxpayers Assoc., Inc.,* No. 78 CH 8291 [Cook Cty. Cir. Ct.]. The Attorney General sought to investigate the conduct of the Association in order to protect the interests of Illinois consumers. On January 22, 1979, a consent decree was entered and approved by the Circuit Court in the state action. It set forth the terms and provisions by which the Association may complete its membership, retain attorneys, accountants and others, and file suit on behalf of participating Colorado City lot owners. This decree contains certain lot owner safeguards such as the requirement to make full disclosure and submit monthly reports to the Illinois Attorney General containing all receipts and disbursements.

This action in federal district court was brought on December 19, 1978, by GWC to enjoin defendants Mark Binstein, Robert Pfeil and the Association from soliciting litigation against GWC and from interfering with the business and contractual relationships between GWC and its customers. This court issued temporary restraining orders in favor of GWC against all defendants. The TRO against the Association was vacated in January of 1979, but in May an order was entered which remains in effect at the present time. That order restrains the Association from collecting fees or soliciting Colorado City lot purchasers who are not presently members of the Association.

A final judgment and consent decree with respect to defendant Mark Binstein was entered and approved by this court on March 9, 1979. Essentially, that decree enjoins Mr. Binstein from interfering with the business and contractual relationships between GWC and lot purchasers, from soliciting litigation against GWC, and from handling any money received from lot purchas-

ers to join in legal proceedings against GWC. There are also provisions by which GWC and this court can monitor Binstein's compliance with the terms of the consent decree.

On April 2, 1979, a hearing was held in this court on plaintiff's motion for a preliminary injunction against the Association. Both sides presented evidence. At that hearing, plaintiff GWC repeatedly failed to deny allegations of fraud. Subsequently, this court raised *sua sponte* the issue of whether GWC would have to establish clean hands before the court could consider GWC's motion for injunctive relief.

While this action was pending, GWC filed similar suits in the state courts of Colorado, Nebraska and Texas to enjoin the defendants. Those actions have been removed to the respective federal district courts of each state.

The Illinois Attorney General has recently filed an amended class action complaint in the Circuit Court of Cook County under the Illinois Consumer Fraud and Deceptive Practice Act and the Illinois Consumer Fraud Act, adding the plaintiff herein and other persons as defendants. That action, originally filed in the Circuit Court of Cook County, has been removed to this court and consolidated with this case. It challenges the alleged land fraud practices of GWC and seeks to recover funds for allegedly defrauded Illinois residents.

## II. PRELIMINARY INJUNCTION

■ The plaintiff asks this court to use its equitable powers to grant the extraordinary remedy of a preliminary injunction.[1] Such a remedy rests in the sound discretion of the court. *Kolz v. Board of Education,* 576 F.2d 747, 748 (7th Cir. 1978); *Motorcycle Swap Meet, Inc. v. Abate Inc.,* 72 Ill. App.3d 778, 778, 29 Ill.Dec. 151, 391 N.E.2d 414, 416 (1st Dist. 1979).

Plaintiff's motion for preliminary injunction will be denied for three reasons: (A) plaintiff has refused to demonstrate that it comes seeking equitable relief with clean hands; (B) the activities plaintiff seeks to enjoin involve important first amendment protected rights; and (C) a comparison of the relative hardships involved favors denial of a preliminary injunction.

### A. Unclean Hands

This court, *sua sponte,* raised the issue of the applicability of the equitable doctrine of unclean hands to the present case. Subsequently, defendants, by their allegations of fraud in the pleadings, raised it as an issue in the case. *See American University v. Wood,* 216 Ill.App. 189, 199 (1st Dist. 1919), aff'd 294 Ill. 186, 128 N.E. 330 (1920).

■ The doctrine of unclean hands prevents a court of equity from granting relief to a plaintiff whose conduct has been unconscionable or tainted with bad faith. *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.,* 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945); *Patient Care Services, S. C. v. Segal,* 32 Ill.App.3d 1021, 1033, 337 N.E.2d 471, 481 (1st Dist. 1975). Thus, a court may deny equitable relief if the applicant is guilty of misconduct, fraud or bad faith toward the party against whom relief is sought in connection with the transaction under consideration. *Nice Ball Bearing Co. v. Bearing Jobbers, Inc.,* 205 F.2d 841, 850–51 (7th Cir.), *cert. denied,* 346 U.S. 911, 74 S.Ct. 242, 98 L.Ed. 408 (1953); *Metcalf v. Altenritter,* 53 Ill.App.3d 904, 908, 12 Ill.Dec. 1, 369 N.E.2d 498, 501 (5th Dist. 1977).

Although the doctrine of unclean hands has not been lightly applied, *see Illinois Power Co. v. Latham,* 15 Ill.App.3d 156, 303 N.E.2d 448 (5th Dist. 1973) (unclean hands doctrine is not favored by courts or intended to prevent equity from doing complete justice), Illinois courts have used their discretion when necessary to protect the courts and further the goals of equity. *See, e. g., Mother Earth, Ltd. v. Strawberry Camel, Ltd.,* 72 Ill.App.3d 37, 28 Ill.Dec. 226, 390 N.E.2d 393 (1st Dist. 1979); *Metcalf v. Altenritter,* 53 Ill.App.3d 904, 12 Ill.Dec. 1, 369 N.E.2d 498 (5th Dist. 1977).

---

1. Jurisdiction of this court over the matters complained of is based on diversity of citizenship. Illinois law is conceded by all to be controlling.

In this case, plaintiff comes seeking equitable relief under a heavy cloud of massive land fraud allegations. There are substantial charges made by responsible parties, including the State of Illinois through its legal officer, that GWC bilked millions of dollars from people all across country. Defendants not only allege that GWC is guilty of such fraud in their amended answer and counterclaim, but have persistently maintained that GWC seeks to enjoin the activities of the Association in order to cover up the land fraud and deny recovery to the lot purchasers.

In raising the issue of fraud, the Association has called into question the right of GWC to equitable relief. A grant of injunctive relief to GWC would only be proper if these allegations of fraud are without merit. *See Mother Earth, Ltd. v. Strawberry Camel, Ltd.,* 72 Ill.App.3d at 53, 28 Ill. Dec. at 239, 390 N.E.2d at 406. If GWC is guilty of the very serious charges levelled against it, this court would not serve equity by enjoining the Association whose purpose it is to expose and rectify the wrongdoing of GWC. *See Diversey Corp. v. Charles Pfizer & Co.,* 255 F.2d 60, 62 (7th Cir.), *cert. dismissed,* 358 U.S. 876, 79 S.Ct. 116, 3 L.Ed.2d 106 (1958) (court would be an abettor of inequity if it entertained patent infringement suit of one whose conduct was willful and morally reprehensible). This court does not seek to try the fraud lawsuit, but merely to make a preliminary finding as to the merits of defendants' claims of GWC's fraud against them. Under the circumstances of this case, such a finding is necessary to guarantee that the equitable powers of the court are not used to aid the perpetration of a fraud. *See Brennan v. Persselli,* 266 Ill.App. 441, 451 (1932), *aff'd* 353 Ill. 630, 187 N.E. 820 (1933).

■ The burden is on GWC, as the party seeking affirmative judicial relief from this court, to show at the threshold that it has come to equity with clean hands. *See Robinson v. American Broadcasting Companies,*

328 F.Supp. 421, 422–26 (E.D.Ky.1970), *aff'd on other grounds,* 441 F.2d 1396 (6th Cir. 1971). GWC has refused to make any showing at all, however, that it is not guilty of prior fraudulent conduct towards Colorado City lot purchasers. Transcript, April 2, 1979, at 13, 89, 128. Indeed, on the direct inquiry of the court, GWC's counsel refused to deny that fraudulent acts had taken place.[2] While stating that he violently disagreed with a number of the factual allegations made against GWC, he agreed with the court's restatement of their position as being that GWC has never said "[w]e have not defrauded." Instead, its position has been, "[w]hen and if that case is ever filed, that is when it will be litigated." Transcript, May 4, 1979, at 21.

■ GWC maintains that the doctrine of unclean hands cannot be applied in this case on other grounds. First, it contends that all its prior conduct, whether innocent or fraudulent, was directed towards individual lot owners and not the defendant Association. Since the doctrine of unclean hands only applies if the wrongful act of the plaintiff was directed towards the defendants sought to be enjoined, *see Illinois Power Co. v. Latham,* 15 Ill.App.3d at 167–68, 303 N.E.2d at 457, GWC argues that it cannot be applied here. This contention is totally without merit. Equity looks to substance over form to determine the real nature of the relationship between parties. *In re Kassuba,* 562 F.2d 511, 513 (7th Cir. 1977). The membership of the Association is made up entirely of defrauded lot owners. Its purpose is to inform lot owners of and seek legal redress for GWC's allegedly fraudulent conduct. The lot owners are the real parties in interest no matter what legal form their association takes.

■ Second, GWC argues that there is no connection between its prior conduct and the Association activities which it seeks to enjoin. *See Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.,* 324 U.S. at 816, 65 S.Ct. 993. This argu-

---

**2.** Although GWC offered to make a showing of good faith "in this matter", this court took that to mean an offer to show good faith in attempt-

ing to enjoin the defendants, not good faith in connection with all the allegations of fraud.

ment is equally meritless. It is clear that the solicitation which GWC seeks to enjoin and GWC's previous real estate dealings with these lot owners are inextricably connected. There would be no Association, nor efforts to communicate information, solicit membership, fees, or litigation were it not for GWC's prior conduct towards these lot owners.

Because of GWC's repeated failure to deny that it has defrauded Association members in prior real estate transactions for which they now seek recovery, this court will use its discretion to invoke the doctrine of unclean hands.

**B. First Amendment Protected Rights**

Defendants contend that the preliminary injunction GWC seeks would interfere with the first amendment rights of association and speech of the Colorado City Lot Owners and Taxpayers Association and its members. They assert that they have a constitutional right to band together for the purpose of gathering information about GWC's alleged fraud, soliciting other persons similarly situated to commence a lawsuit, retaining attorneys to represent them, and sharing in the costs of litigation.

In *NAACP v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963), the United States Supreme Court established the principle that "collective activity undertaken to obtain meaningful access to the courts is a fundamental right within the protection of the First Amendment." *See In re Primus,* 436 U.S. 412, 426, 98 S.Ct. 1893, 1901, 56 L.Ed.2d 417 (1978). In establishing that principle, the Court rejected the contention that solicitation of litigation is wholly outside the area of freedoms protected by the first amendment. *NAACP v. Button,* 371 U.S. at 429, 83 S.Ct. 328. The Court held that the activities of the NAACP and its members in advocating lawful means of vindicating legal rights were modes of expression and association within the scope of the first amendment. *Id.* at 437, 83 S.Ct. 328.

Although the NAACP in *Button* was concerned chiefly with litigation which could be characterized as a form of political expression, subsequent decisions upheld the rights of associations to assist their members in litigating economic rather than political claims. *See United Transp. Union v. Michigan Bar,* 401 U.S. 576, 91 S.Ct. 1076, 28 L.Ed.2d 339 (1971) (labor union assisted workers in filing damage suits under Federal Employers' Liability Act); *United Mine Workers v. Illinois Bar Assn.,* 389 U.S. 217, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967) (labor union employed attorneys to represent members and their families in claims under the Illinois Workmen's Compensation Act); *Brotherhood of Railroad Trainmen v. Virginia Bar,* 377 U.S. 1, 84 S.Ct. 1113, 12 L.Ed.2d 89 (1964) (labor union advised injured members and their dependents to obtain legal assistance before settling claims and recommending specific lawyers to handle such claims). *Cf. Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976).

■ An organization which asserts the common legal rights of its members has more than a mere right to inform and advocate. Its members also have a right to advise each other and to recommend competent attorneys to each other without being open to the charges of unauthorized practice of law or solicitation of business. *Brotherhood of Railroad Trainmen v. Virginia Bar,* 377 U.S. at 6–7, 84 S.Ct. 1113, 12 L.Ed.2d 89. Similarly, organizations have a constitutional right to seek means to enable their members to meet the cost of legal representation. *United Transp. Union v. Michigan Bar,* 401 U.S. at 585–86, 91 S.Ct. 1076. *See International Union UAW v. National Right to Work Legal Defense & Education Foundation, Inc.,* 433 F.Supp. 474, 482 (D.D.C.1977) (proviso to federal statute could not constitutionally prohibit right-to-work organizations from financing and supporting union members' lawsuits against their union).

Plaintiff's main contention is that this line of authority does not control the matter before the court because the Association is not a bona fide organization of lot owners.

It argues that the Association's activities are nothing more than a vehicle to raise money for Mark Binstein and various attorneys. Since it views the Association as merely an alter ego of Binstein and these attorneys, it further argues that this court has authority under *Ohralik v. Ohio State Bar Association*, 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978), to enjoin the Association's activities as a danger which the state has a right to protect.

█ The court disagrees with the plaintiff's contention. The Association is now, following reorganization pursuant to court order, a bona fide organization of aggrieved land owners. Under the circumstances of this case, where aggrieved individuals have joined together to tell others of their rights and to safeguard a common interest, their activities are protected by the first amendment.

This court holds that the Colorado City Lot Owners and Taxpayers Association, Inc.'s solicitation of litigation against GWC is distinguishable from the "ambulance chasing" activities under scrutiny in *Ohralik*. In *Ohralik*, the Ohio Bar Association suspended an attorney who, upon hearing that a casual acquaintance had been injured in a car accident, solicited from her a contingent fee arrangement. The Supreme Court affirmed the State Bar's disciplinary action, holding that "the State . . . constitutionally may discipline a lawyer for soliciting in person, for pecuniary gain, under circumstances likely to pose dangers that the State has a right to prevent." *Ohralik v. Ohio State Bar Association*, 436 U.S. at 449, 98 S.Ct. at 1915.

GWC's reliance on *Ohralik* is misplaced because this case does not involve soliciting for profit in the same sense. The court has rejected GWC's contention that the Association is a mere front for those who might be involved in "ambulance chasing." Whatever the previous history and activities of the Association, the purpose of the Association

today is to seek justice and recovery for a fraud allegedly perpetrated against its members.

### C. *Comparison of Relative Hardships*

█ Since courts exercise a very far-reaching power when they grant preliminary injunctions, such injunctions will not be issued unless a clear right to relief is shown. *General Electric Co. v. American Wholesale Co.*, 235 F.2d 606, 608 (7th Cir. 1956); *S & F Corp. v. American Express Co.*, 60 Ill.App.3d 824, 828, 377 N.E.2d 73, 76 (1st Dist. 1978). The elements to be considered in determining whether to grant such relief are: (1) likelihood of plaintiff's success on the merits; (2) lack of an adequate remedy at law; (3) a comparison of the relative hardships imposed on the parties; and (4) whether the granting of a preliminary injunction will serve the public interest. *Local Div. 519, Amalgamated Transit Union v. LaCrosse Mun. Transit Util.*, 585 F.2d 1340, 1351 (7th Cir. 1978); *Iowa Center Assoc. v. Watson*, 456 F.Supp. 1108, 1112–13 (N.D.Ill.1978); *S & F Corp. v. American Express Co.*, 60 Ill.App.2d at 828, 377 N.E.2d at 76.

█ Plaintiff has not convinced the court that it can satisfy the third factor in this case. The court does not make light of the hardships asserted by plaintiff. If it is correct about the merits of this case, defendants' activities may cause serious reputational harm and interference with its business relationships.[3] Nevertheless, the hardship to the defendants in this case clearly outweighs any hardship to the plaintiff.

It is well settled that the deprivation of first amendment rights for even minimal periods constitutes irreparable harm in the context of an action for injunctive relief. *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (plurality opinion); *Citizens for a Better Environment v. Park Ridge*, 567 F.2d 689, 691 (7th Cir. 1975); *Collin v. O'Malley*, 452 F.Supp. 577

---

**3.** The fact that the defendants' activities may also expand the number of potential persons who will sue and ultimately collect a judgment against GWC for fraud if their claim is upheld

cannot be considered. That may be a harm in the practical sense, but certainly it is not a legal harm against which this court will protect.

(N.D.Ill.1978). When the interference with first amendment rights is placed in the balance alongside other hardships asserted by defendants, plaintiff has an overwhelming burden indeed to show that its hardships are countervailing.

The other hardships imposed on the defendants by the grant of a preliminary injunction, even without considering the first amendment issues, would be substantial. It would necessarily impair the ability of the Association to pursue a recovery against GWC for fraud. In order to pursue this recovery, the Association needs additional funds and therefore needs to solicit additional membership and fees. Defendants contend that their present need for money is particularly acute because GWC has filed such suits as the instant one against them in an effort to exhaust their financial resources. The costs of a lawsuit are great. Few individual lot purchasers could afford to pursue a recovery on their own.[4] The class action suit filed by the Illinois Attorney General may or may not provide adequate relief to the aggrieved parties. That is not for this court to decide. Many of

those parties have chosen to band together to assert their legal rights and they apparently believe that the Colorado City Lot Owners and Taxpayers Association, Inc. offers them the best opportunity for a recovery.[5]

Thus, even were the defenses of unclean hands and protected first amendment conduct not present in this case, the court would still deny the requested preliminary injunction.

## III.  LOCAL RULE 22

■  Defendants have argued that Civil Rules of the United States District Court of the Northern District of Illinois, Rule 22,[6] could not be applied to them because the matter before the court was not a potential class action under the rule. Consolidation of this case with the class action complaint filed by the Illinois Attorney General, however, has partially rendered moot that argument. All Illinois lot owners are now potential class action litigants in the matter before this court. Rule 22 must be applied for their benefit. Application of the rule to the Illinois lot owners will impose no particular hardship in this case since all that is

---

**4.** Preventing all these people from litigating their claims would also be against the public interest.

**5.** Furthermore, silencing the Association for any length of time works to the advantage of GWC because while the statute of limitations runs, many defrauded landowners remain uninformed of their legal rights.

**6.** Rule 22 states:

In every potential and actual class action under Rule 23, F.R.Civ.P., all parties thereto and their counsel are hereby forbidden, directly or indirectly, orally or in writing, to communicate concerning such action with any potential or actual class member not a formal party to the action without the consent of and approval of the communication by order of the Court. Any such proposed communication shall be presented to the Court in writing with a designation of or description of all addresses and with a motion and proposed order for prior approval by the Court of the proposed communication and proposed addressees. The communications forbidden by this rule, include, but are not limited to, (a) solicitation directly or indirectly of legal representation of potential and actual class members who are not formal parties to the class action; (b) solicitation of fees and expenses and agreements to pay fees and expenses, from potential and actual class

members who are not formal parties to the class action; (c) solicitation by formal parties to the class action of requests by class members to opt out in class actions under subparagraph (b)(3) of Rule 23, F.R.Civ.P.; and (d) communications from counsel or a party which may tend to misrepresent the status, purposes and effects of the action, and of actual or potential Court orders therein, which may create impressions tending, without cause, to reflect adversely on any party, any counsel, the Court, or the administration of justice. The obligations and prohibitions of this rule are not exclusive. All other ethical, legal and equitable obligations are unaffected by this rule.

This rule does not forbid (1) communications between an attorney and his client or a prospective client, who has on the initiative of the client or prospective client consulted with, employed or proposed to employ the attorney, or (2) communications occurring in the regular course of business or in the performance of the duties of a public office or agency (such as the Attorney General) which do not have the effect of soliciting representation by counsel, or misrepresenting the status, purposes or effect of the action and orders therein.

Adopted April 15, 1970. Amended June 15, 1971.

required is previous consent and approval by the court for communications. The defendants have sought such court approval all along, so there need be no change in procedure.

This disposition of the applicability of Rule 22 to Illinois lot owners does not resolve the issue of whether out-of-state lot owners, who are not parties to the class action filed by the Illinois Attorney General, might still be "potential" class action members. Rule 22 is ambiguous as to whether it applies prior to the filing of a lawsuit. One construction of the word "potential" could make the rule applicable to them although no action has presently been brought on their behalf simply because one might be brought in the future.

■ Because first amendment rights are involved, *see* pp. 834–835 *supra,* serious constitutional problems are raised by an overbroad application of the rule. Such a rule cannot constitutionally prohibit a group of individuals from banding together to encourage common participation in a lawsuit. *See Coles v. Marsh,* 560 F.2d 186 (3d Cir.), *cert. denied,* 434 U.S. 985, 98 S.Ct. 611, 54 L.Ed.2d 479 (1977); *Rodgers v. United States Steel Corp.,* 508 F.2d 152 (3d Cir.), *cert. denied,* 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975); pp. 834–835 *supra.* But *cf. Bernard v. Gulf Oil Co.,* 596 F.2d 1249 (5th Cir. 1978) (rule's explicit grant of authority to the trial court to control the conduct and settlement of the action outweighs party's right to encourage common participation in litigation of claim). The court will avoid a construction of Rule 22 which potentially would infringe on constitutionally protected rights. *See, e. g., Kent v. Dulles,* 357 U.S. 116, 127, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958); *United States v. Cord,* 458 F.Supp. 1207 (N.D.Ill.1978) (statutes and administrative agency actions will be construed to avoid potential infringement of cherished constitutional rights). Therefore, the court holds that Rule 22 does not apply to the out-of-state lot owners who are not parties to the class action filed by the Illinois Attorney General.[7]

Accordingly, plaintiff GWC's motion for preliminary injunction is hereby denied. Defendant Colorado City Lot Owners and Taxpayers Association, Inc., is ordered to seek approval of this court, as they have done previously, for all communications with potential class members pursuant to Local Rule 22. The defendants may petition this court to consider a request for just costs and attorneys' fees if they can show cause.

7. Defendants may, if they wish to avoid any potential problems, request court approval for communications with out-of-state as well as Illinois lot owners.