Wesley P. BERNARD et al.,
Plaintiffs-Appellants,

v.

GULF OIL COMPANY et al.,
Defendants-Appellees.

No. 77–1502.

United States Court of Appeals,
Fifth Circuit.

June 19, 1980.

Ulysses Gene Thibodeaux, Lake Charles, La., Barry L. Goldstein, Washington, D. C., Jack Greenberg, Patrick O. Patterson, New York City, for plaintiffs-appellants.

William H. Ng, Atty., Joseph T. Eddins, Jr., Assoc. Gen. Counsel, Charles L. Reischel, Asst. Gen. Counsel, Susan B. Reilly, Lutz A. Prager, Equal Employment Opportunity Commission, Washington, D. C., Carol E. Heckman, Jessica Dunsay Silver, Drew S. Days, III, Asst. Atty. Gen., Appellate Sec., Civil Rights Div., Dept. of Justice, Washington, D. C., amicus curiae, for E. E. O. C.

Wm. G. Duck, Susan R. Sewell, U. S. Jones, Houston, Tex., for Gulf Oil.

Michael D. Murphy, Port Arthur, Tex., for Oil, Chemical & Atomic Workers, Etc.

John D. Buchanan, Jr., Tallahassee, Fla., William F. Kaspers, Atlanta, Ga., for amicus Tallahassee Memorial Hospital.

Before COLEMAN, Chief Judge, BROWN, GODBOLD, RONEY, GEE, TJOFLAT, HILL, FAY, RUBIN, VANCE, KRAVITCH, FRANK M. JOHNSON, Jr., GARZA, HENDERSON, REAVLEY, POLITZ, HATCHETT, ANDERSON, RANDALL, TATE, SAM D. JOHNSON and THOMAS A. CLARK, Circuit Judges.[*]

GODBOLD, Circuit Judge:

This suit was brought as a class action by six present or retired black employees of the Port Arthur, Texas, plant of Gulf Oil Company, under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e–2) and 42 U.S.C. § 1981. The members of the asserted class are black employees and black former employees of the Port Arthur plant, and black applicants rejected for employment with Gulf Oil (at the Port Arthur plant and elsewhere). The defendants are Gulf Oil and the Oil, Chemical and Atomic Workers' Union.

[*] Judges Goldberg, Ainsworth and Charles Clark did not participate in the consideration or decision of this case.

Plaintiffs charged that Gulf discriminated against blacks in hiring, job assignments, pay scales, discipline and discharge, employed discriminatory tests and racially tainted promotion and progression practices, and denied training to blacks and refused seniority to blacks. They alleged that the union had agreed to, acquiesced in or condoned Gulf's discriminatory practices. The district court dismissed the Title VII claim as untimely filed, granted summary judgment for defendants on the § 1981 claim, and applied laches as an additional ground for its disposition of both claims. With respect to these three holdings, we adopt parts I, II and III of the panel opinion[1] and reverse and remand to the district court. A fourth issue we will consider at length. It concerns the validity of an order of the district court restricting communications by named plaintiffs and their counsel with actual and potential class members not formal parties to the suit. By a divided vote the panel found the order valid. 596 F.2d at 1258. We hold that the order violated the First Amendment to the Constitution and Rule 23, Fed.R.Civ.P.

## I. *The background*

The facts are accurately stated in the dissenting opinion to the panel decision, 596 F.2d at 1262–76, and the court adopts that statement. We restate the facts in condensed form.

In April 1976, Gulf and EEOC entered into an extra-judicial conciliation agreement covering alleged racial discrimination against blacks at the Port Arthur plant and providing for conciliation of alleged discriminatory practices and for back pay to 614 present and former black employees. No employees were parties to the agreement. Plaintiffs brought this suit in May 1976, represented by local counsel in association with New York attorneys from the NAACP Legal Defense and Education Fund. Before answering and before a class was certified, Gulf filed an unsworn request

1. *Bernard v. Gulf Oil Co.*, 596 F.2d 1249, *vacated*, 604 F.2d 449 (5th Cir. 1979).

that the court enter an order limiting communication by parties and their counsel with actual or potential class members. Gulf asserted that it had received reports that one of plaintiffs' attorneys had attended a meeting of actual and potential class members and had advised the group not to sign receipts and releases sent to them pursuant to the conciliation agreement because he could recover twice as much for them in the suit just filed.

District Judge Steger entered a temporary order on May 28.[2] Gulf filed an additional unsworn charge that the same plaintiffs' attorney had also recommended that employees who had already signed receipts and releases should return their checks. Gulf also filed an affidavit from EEOC which stated that the issues in the suit were almost identical to those embraced in the conciliation agreement.

Plaintiffs challenged the constitutionality of the temporary order. They filed affidavits denying Gulf's charges and a brief asserting that numerous issues in the suit were not within the matters conciliated. On June 22, without proof of the unsworn charges made by Gulf and without entering findings of fact, Chief District Judge Fisher

rejected plaintiffs' constitutional arguments and entered a modified order explicitly modeled on that suggested in the *Manual for Complex Litigation*, Part II, § 1.41 (1973 ed.),[3] a publication widely used by federal judges. It is the validity of this modified order that is now before us.

On July 6 plaintiffs moved for permission for themselves and their counsel to communicate with members of the proposed class and also asked for guidance from the court. They attached a notice, reproduced at 596 F.2d 1266, which they proposed to distribute and asserted that they were constitutionally entitled to distribute. The notice alerted black employees to the existence of the lawsuit as an alternative to acceptance of Gulf's conciliation offer and urged them to talk to an attorney. The time for acceptance of Gulf's conciliation offer expired on or about August 8. On August 10, the court, without explanation, denied plaintiffs' motion by a one-sentence order.

## II. *The provisions of the order*

The order, described by plaintiffs as a "gag order," is broad in scope and plenary in nature, forbidding a wide range of communications.[4]

---

**2.** It is substantially the same as ¶ 2 of the modified order. *See* n. 4 *infra.*

**3.** The form of the suggested order is the same in the 1977 edition of the *Manual.*

The 1977 edition also appears at 1 Pt. 2 Moore's Federal Practice, Part II, ¶ 1.41, at 226–28 (2d ed. 1979) and Wright & Miller, *Manual for Complex Litigation*, Part II, § 1.41 at 188–89 (1977).

**4.** The order, as modified, provided:

IT IS ORDERED:

(1) That Gulf's motion to modify Judge Steger's Order dated May 28, 1976 is granted;

(2) That Judge Steger's Order dated May 28, 1976 be modified so as to read as follows:

In this action, all parties hereto and their counsel are forbidden directly or indirectly, orally or in writing, to communicate concerning such action with any potential or actual class member not a formal party to the action without the consent and approval of the proposed communication and proposed addressees by order of this Court. Any such proposed communication shall be presented to this Court in writing with a designation of or description of all addressees and with a motion and proposed order for prior approval

by this Court of the proposed communication. The communications forbidden by this order include, but are not limited to, (a) solicitation directly or indirectly of legal representation of potential and actual class members who are not formal parties to the class action; (b) solicitation of fees and expenses and agreements to pay fees and expenses from potential and actual class members who are not formal parties to the class action; (c) solicitation by formal parties to the class action of requests by class members to opt out in class actions under subparagraph (b)(3) of Rule 23, F.R.Civ.P.; and (d) communications from counsel or a party which may tend to misrepresent the status, purposes and effects of the class action, and of any actual or potential Court orders therein which may create impressions tending, without cause, to reflect adversely on any party, any counsel, this Court, or the administration of justice. The obligations and prohibitions of this order are not exclusive. All other ethical, legal and equitable obligations are unaffected by this order.

This order does not forbid (1) communications between an attorney and his client or a prospective client, who has on the initiative

The persons enjoined are "all parties hereto and their counsel."

The subject matter forbidden is communications with any actual or potential class member not a formal party, "concerning [this] action . . . without the consent and approval of the proposed communication and proposed addressees by order of this Court." More specific communications that the proscription includes, but is not limited to, are: (a) solicitation of legal representation of potential and actual class members not formal parties; (b) solicitation of fees and expenses; (c) solicitation of requests by class members to opt out; and (d) "communications from counsel or a party which may tend to misrepresent the status, purposes and effects of the class action, and of any actual or potential Court orders therein which may create impressions tending, without cause, to reflect adversely on any party, any counsel, this Court, or the administration of justice."

The means of communication forbidden are "directly or indirectly, orally or in writing."

The order contains several exceptions, set out in the second subparagraph of ¶(2): communications between attorney and client, and between attorney and prospective client when initiated by the prospective client, and communications in the regular course of business.

of the client or prospective client consulted with, employed or proposed to employ the attorney, or (2) communications occurring in the regular course of business or in the performance of the duties of a public office or agency (such as the Attorney General) which do not have the effect of soliciting representation by counsel, or misrepresenting the status, purposes or effect of the action and orders therein.

If any party or counsel for a party asserts a constitutional right to communicate with any member of the class without prior restraint and does so communicate pursuant to that asserted right, he shall within five days after such communication file with the Court a copy of such communication, if in writing, or an accurate and substantially complete summary of the communication if oral.

(3) That Gulf be allowed to proceed with the payment of back pay awards and the obtaining of receipts and releases from those employees covered by the Conciliation Agreement dated April 14, 1976, between Gulf, the U.S. Equal Employment Opportunity Commission and the Office for Equal Opportunity, U.S. Department of the Interior; That the private settlement of charges that the employer has violated Title VII is to be encouraged, *United States v. Allegheny-Ludlum Industries, Inc.*, 517 F.2d 826 (5th Cir. 1975), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976).

(4) That the Clerk of the Court mail a notice to all employees of Gulf at its Port Arthur Refinery *who are covered by the Conciliation Agreement* and who have not signed receipts and releases for back pay awards informing them that they have 45 days from the date of the Clerk's notice to accept the offer as provided for by the Conciliation Agreement or such offer will expire until further order of the Court;

(5) That the contents of the notice be the same as that set out in Appendix I;

(6) That Gulf bear the expense of mailing the notice and a copy of the Court's order to the individuals covered by item (4) above;

(7) That all employees who have delivered receipts and releases to Gulf on or before 55 days from the date of the Clerk's notice shall be deemed to have accepted the offer as contained in the Conciliation Agreement;

(8) That any further communication, either direct or indirect, oral or in writing (other than those permitted pursuant to paragraph (2) above) from the named parties, their representatives or counsel to the potential or actual class members not formal parties to this action is forbidden;

(9) That Gulf inform the Court 65 days from the date of the Clerk's notice to be sent by the Clerk of the Court of the names of potential or actual class members who have accepted the offer of back pay and signed receipts and releases pursuant to the Conciliation Agreement and the names of those who have refused or failed to respond.

It is Plaintiff's contention that any such provisions as hereinbefore stated that limit communication with potential class members are constitutionally invalid, citing *Rodgers v. United States Steel Corporation*, 508 F.2d 152 (3rd Cir. 1975), *cert. denied*, 420 U.S. 969, 95 S.Ct. 1386, 43 L.Ed.2d 649 (1975). This Court finds that the *Rodgers* case is inapplicable, and that this order comports with the requisites set out in the *Manual for Complex Litigation*, Section 1.41, p. 106 CCH Edition 1973, which specifically exempts constitutionally protected communication when the substance of such communication is filed with the Court.

*Bernard v. Gulf Oil Co., supra*, 596 F.2d at 1258 n. 9.

The third subparagraph of ¶(2) is a much-debated provision requiring post-communication filing with the court of any communication asserted to be constitutionally protected:

> If any party or counsel for a party asserts a constitutional right to communicate with any member of the class without prior restraint and does so communicate pursuant to that asserted right, he shall within five days after such communication file with the Court a copy of such communication, if in writing, or an accurate and substantially complete summary of the communication if oral.

The order also contains a provision that the clerk of the district court send a notice to those employees covered by the conciliation agreement who have not signed receipts and releases for back pay. The notice, which is an appendix to the order, tells the employee that this case is pending, and briefly describes it, and that he has been identified as an actual or potential class member. It describes the outstanding conciliation offer from Gulf and tells the employee that he has a choice of accepting the Gulf offer or declining it and being considered at a later date for inclusion in the class in the suit. Employees are told they have 45 days in which to accept the conciliation offer.

### III. *The basis for the order*

Presumably, since the district court made no findings, its order was based upon suggestions contained in the *Manual*, which recommends that procedures be devised to anticipate and prevent potential abuses in class actions, including solicitation of representation, solicitation of funds and of opt-out requests, and misrepresentations that may create confusion and reflect adversely on the court or the administration of justice. *Manual*, Part I, § 1.41. The *Manual* recommends that district courts adopt local rules imposing "in every potential and actual class action" substantially the ban on communication that is here involved; and in the absence of a local rule [5] impose the ban by an order entered promptly after the filing of any actual or potential class action. *Id.*, Part I, § 1.41; Part II, § 1.41 (Suggested Local Rule 7 and Suggested Pretrial Order No. 15).[6] Our interpretation of the basis for the court's order is reinforced by the court's rejection of plaintiffs' constitutional arguments on the ground that the order it had entered comported with the requirements of the *Manual*.

We can assume that the district court did not ground its order on a conclusion that the charges of misconduct made by Gulf were true. Nothing in its order indicates that it did, and, if it did, such a conclusion would have been procedurally improper and without evidentiary support. Rather the court appears to have acted upon the rationale of the *Manual* that the court has the power to enter a ban on communications in any actual or potential class action as a prophylactic measure against potential abuses envisioned by the *Manual*.[7]

### IV. *The order is a prior restraint*

The order represents a significant restriction on First Amendment rights. Because no other court of appeals has ruled on the constitutionality [8] of the *Manual's* suggest-

---

**5.** The district court here involved had not adopted a local rule.

**6.** The only significant difference between the suggested local rule and the suggested pretrial order is the wording of the rule's "constitutional right" exception. The suggested rule provides: "Nor does the rule forbid communications protected by a constitutional right." It then imposes the same post-communication filing requirements that the order does. While we here consider the constitutionality of the *Manual's* suggested order, much of our analysis is equally applicable to the suggested local rule.

*See* n. 22 *infra.* The semantic change does not alter the thrust of the rule.

**7.** The panel majority interpreted the district court's action as we do. It treated Gulf's charges as irrelevant and considered that the district court had plenary power in a class action to ban communications by a prophylactic order. 596 F.2d at 1261 n. 14.

**8.** In 1975 the Third Circuit raised the constitutional issue and expressed its doubts about the power of the district court to impose a prior restraint on communication or association in *Rodgers v. U. S. Steel Corp.*, 508 F.2d 152 (3d

ed rule and order, and because of the broad impact of the *Manual's* suggestions,[9] we address the constitutional issues before us.

■ We hold that the order entered in this case is an unconstitutional prior restraint.

■ Prior restraints on freedom of speech have long been disfavored in American law. *Near v. Minnesota*, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931). While a prior restraint is not unconstitutional per se, there is a heavy presumption against its constitutionality. *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558–59, 95 S.Ct. 1239, 1246, 43 L.Ed.2d 448, 459 (1975); *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419, 91 S.Ct. 1575, 1577, 29 L.Ed.2d 1, 5 (1971). We discuss in Part VI, below, the circumstances under which a prior restraint may be held lawful.

■ Prior restraint has traditionally been defined as a "predetermined judicial prohibition restraining specified expression . . . ." *Chicago Council of Lawyers v. Bauer*, 522 F.2d 242, 248 (7th Cir. 1975), cert. denied, 427 U.S. 912, 96 S.Ct. 3201, 49 L.Ed.2d 1204 (1976); *see also Nebraska Press Association v. Stuart*, 427 U.S. 539, 559, 96 S.Ct. 2791, 2802, 49 L.Ed.2d 683, 697–98 (1976); *Near v. Minnesota, supra*; Litwack, *The Doctrine of Prior Restraint*, 12 Harv.C.R.–C.L.Rev. 519, 520 (1977). This expansive definition has not often been further elaborated. There are, however, four separate but related features that may serve to distinguish prior restraints from limitations on free speech imposed by subsequent restraints.

■ *1. Origin.* A prior restraint is generally judicial rather than legislative in ori-

Cir.), *cert. denied*, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975) (*Rodgers I*):

The imposition of such a condition [prior approval] upon access to the Rule 23 procedural device certainly raises serious first amendment issues. *See New Jersey State Lottery Comm'n v. United States*, 491 F.2d 219 (3d Cir.), *cert. granted*, 417 U.S. 907, 94 S.Ct. 2603, 41 L.Ed.2d 211 (1974). There is no question but that important speech and associational rights are involved in this effort by the NAACP Legal Defense and Education Fund, Inc.. to communicate with potential black class members on whose behalf they seek to litigate issues of racial discrimination. *See, e. g., United Transportation Union v. State Bar*, 401 U.S. 576, 91 S.Ct. 1076, 28 L.Ed.2d 339 (1971); *NAACP v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). And the interest of the judiciary in the proper administration of justice does not authorize any blanket exception to the first amendment. *See Wood v. Georgia*, 370 U.S. 375, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1962); *Craig v. Harney*, 331 U.S. 367, 67 S.Ct. 1249, 91 L.Ed. 1546 (1947); *Pennekamp v. Florida*, 328 U.S. 331, 66 S.Ct. 1029, 90 L.Ed. 1295 (1946); *Bridges v. California*, 314 U.S. 252, 62 S.Ct. 190, 86 L.Ed. 192 (1941). Whatever may be the limits of a court's powers in this respect, it seems clear that they diminish in strength as the expressions and associations sought to be controlled move from the courtroom to the outside world. *See* T. Emerson, The System of Freedom of Expression 449 et seq. (1970).

\* \* \* \* \* \*

[T]he committee which drafted the *Manual* probably went too far in its apparent assumption that *Craig v. Harney, supra*, and

*Bridges v. California, supra*, would permit the vesting of unreviewable discretion in a district court to impose a prior restraint on communication or association. 1 J. Moore, *supra*, at 29 n. 28.

508 F.2d at 162–63, 165. However, the Third Circuit elected to proceed on a statutory ground, and no circuit has since directly confronted the constitutional issue.

The Second Circuit, in *Weight Watchers of Philadelphia, Inc. v. Weight Watchers International, Inc.*, 455 F.2d 770 (2d Cir. 1972), rested its refusal to overturn a similar restriction on the unreviewability of discretionary orders by writ of mandamus, and thus did not deal with the constitutionality of the order.

The 1977 edition of the *Manual* adhered to the position of the 1973 edition. The 1978 Supplement reviews the division in the authorities concerning the validity of the recommended rule and order, but concludes:

[T]here should be no modification of the foregoing recommendations or of the sample rule and order based thereon, except when a controlling decision of the court of appeals of the circuit requires it.

*Id.*, Part I, § 1.41, p. 3.

**9.** The local rule suggested by the *Manual* has been adopted in numerous districts. *See* S.D. Fla.R. 19; N.D.Ga.R. 221.2, 3; N.D.Ill.R. 22; D.Md.R. 20; ·M.D.N.C.R. 17(b)(6); S.D.Ohio R. 3.9.4; S.D.Tex.R. 6; W.D.Wash.R. 23(g). No doubt many ban orders have also been entered independently of local rules, on the suggestion of the *Manual*. *See, e. g., NOW v. Minnesota Mining and Manuf. Co.*, 18 FEP Cas. 1177 (D.Minn.1977).

gin, although an enabling statute may authorize the judicial suppression of publication. *Near v. Minnesota, supra.* The essence of prior restraint is that it places specific communications under the personal censorship of the judge. Kalven, *Foreword: Even When a Nation is at War,* 85 Harv.L.Rev. 3, 33 (1971) [hereinafter Kalven].[10]

The district court's order is undeniably judicial in origin.[11]

*2. Purpose.* It has been suggested that the sole purpose of a prior restraint is suppression rather than punishment. *Southeastern Promotions, Ltd. v. Conrad, supra,* 420 U.S. at 558–59, 95 S.Ct. at 1246, 43 L.Ed.2d at 459; *Near v. Minnesota, supra,* 283 U.S. at 715, 51 S.Ct. at 630, 75 L.Ed. at 1367. Unlike a criminal statute, which by its terms defines the punishment for its violation, a prior restraint "does not deal with punishments; it provides for no punishment, except in case of contempt for violation of the court's order, but for suppression and injunction, that is, for restraint upon publication." *Near, supra,* 283 U.S. at 715, 51 S.Ct. at 631, 75 L.Ed. at 1367. The justification for drawing a distinction based on this difference is that "a free society prefers to punish the few who abuse rights of speech *after* they break the law than to throttle them and all others beforehand." *Southeastern Promotions, Ltd. v. Conrad, supra,* 420 U.S. at 559, 95 S.Ct. at 1246, 43 L.Ed.2d at 459; *see also New York Times Co. v. U. S.,* 403 U.S. 713,

733, 91 S.Ct. 2140, 2151, 29 L.Ed.2d 822, 836 (1971) (White, J., concurring).

Without question, the purpose of the order is restraint upon publication.

*3. Means of enforcement.* This distinction between prior and subsequent restraints is inextricably linked to the prior restraint's judicial origin and unique purpose. "Punishment by contempt is an important attribute of a 'prior restraint' that distinguishes it from a criminal statute that forbids a certain type of expression." *Chicago Council of Lawyers v. Bauer, supra,* 522 F.2d at 248. The penalty is thus both more swiftly imposed and less subject to the mitigating safeguards of the criminal justice system than is the punishment for violation of a statute. *See Nebraska Press Association v. Stuart, supra,* 427 U.S. at 559, 96 S.Ct. at 2802, 49 L.Ed.2d at 697–98; *U. S. v. Gurney,* 558 F.2d 1202, 1208 (5th Cir. 1977), *cert. denied,* 435 U.S. 968, 98 S.Ct. 1606, 56 L.Ed.2d 59 (1978). This lack of safeguards accentuates the dangers inherent in any suppression of speech. *See Southeastern Promotions, Ltd. v. Conrad, supra,* 420 U.S. at 559, 95 S.Ct. at 1246, 43 L.Ed.2d at 459–60; *In re Halkin,* 598 F.2d 176, 184 n. 15 (D.C.Cir.1979).

The expression restrained in this case is not forbidden by any statute. The text of the order is silent as to means of enforcement,[12] and there are other possible means available,[13] but the appellees accept that the

---

**10.** The classic prior restraint is an administrative licensing scheme adopted pursuant to a statute. The licensor has broad discretion with regard to each publication to be restrained. *See, e. g., Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975); *Penthouse Int'l, Ltd. v. McAuliffe,* 610 F.2d 1353, 1359–61 (5th Cir. 1980). The distinction between this type of scheme and a more general legislative enactment is that the restraint operates only on specific publications, chosen by the administrator. There is thus less room for diversity to exercise its "tendency to break and control the violence of faction." The Federalist No. 10 (Madison). The same danger exists with respect to judicial restrictions on free speech; indeed, most of the more recent prior restraint cases have involved judicial rather than administrative licensing. *See, e. g.,*

*Nebraska Press Association v. Stuart, supra; New York Times Co. v. U. S.,* 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971).

**11.** We need not pass on the validity of the distinction made by the Seventh Circuit in *Chicago Council of Lawyers v. Bauer, supra,* 522 F.2d at 248, between courts as judicial bodies and courts as rulemaking or quasi-legislative bodies. However, since the instant order was promulgated in the course of litigation and not as a local rule, it satisfies even that Circuit's definition of a judicial restraint.

**12.** The *Manual* is silent also.

**13.** Possibly the court could penalize a plaintiff attorney who disobeyed the order by removing him as attorney for the class, or deny or with-

means of enforcement intended is the contempt power of the court, and we agree.[14]

The dangers associated with the penalty of contempt inhere even though other sanctions are to some extent available. Persons subject to the order before us could reasonably conclude that the court's contempt power extended to enforcement of the order, and the conclusion is inescapable that it was exposure to contempt that silenced plaintiffs' attorneys and caused them to ask leave of court to send out the notice to class members.[15]

Moreover, the potential availability of other sanctions cannot serve to reduce the constitutional infirmity of the order. This prong of the test is concerned primarily with the lack of procedural safeguards associated with the enforcement of prior restraints. The fact that contempt is only one of several alternative sanctions does not ameliorate this concern.

*4. Means of constitutional challenge.* While the unconstitutionality of a statute may be raised as a defense to prosecution for its violation, a litigant who disobeys an injunction is precluded from raising its constitutional invalidity as a defense in contempt proceedings. *Compare Shuttlesworth v. Birmingham*, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969) *with Walker v. Birmingham*, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967); *see U. S. v. Dickinson*, 465 F.2d 496 (5th Cir. 1972), *cert. denied*, 414 U.S. 979, 94 S.Ct. 270, 38 L.Ed.2d 223

(1973) (applying rule against collateral attack to judicial restriction on publication); *cf. In re Timmons*, 607 F.2d 120, 124–25 (5th Cir. 1979) (similar distinction between civil and criminal contempt). Thus, a prior restraint may be distinguished from a statute prohibiting publication in that the former has "an immediate and irreversible sanction. If it can be said that a threat of criminal or civil sanctions after publication 'chills' speech, prior restraint 'freezes' it at least for the time." *Nebraska Press Association v. Stuart, supra*, 427 U.S. at 559, 96 S.Ct. at 2803, 49 L.Ed.2d at 698. As one commentator has eloquently observed: "Prior restraints fall on speech with a brutality and a finality all their own. Even if they are ultimately lifted they cause irremediable loss—a loss in the immediacy, the impact, of speech." A. Bickel, The Morality of Consent 61 (1975), *quoted in Nebraska Press Association v. Stuart, supra*, 427 U.S. at 609, 96 S.Ct. at 2826, 49 L.Ed.2d at 727 (Brennan, J., concurring).

The impact of the present order was direct and immediate. It silenced the named plaintiffs and their attorneys during the period that Gulf's conciliation offers were outstanding and putative class members were considering whether to accept. A named plaintiff, questioned by the black employee working next to him concerning the suit or the relative advantages of conciliation award and suit, could not reply. The order cut off dialogue [16] despite the contentions of plaintiffs' counsel that some of the

---

draw class action status, *Halverson v. Convenient Food Mart, Inc.*, 458 F.2d 927 (7th Cir. 1972); *Korn v. Franchard Corp.*, 456 F.2d 1206 (2d Cir. 1972); *Kronenberg v. Hotel Governor Clinton, Inc.*, 281 F.Supp. 622 (S.D.N.Y.1968), or remove as class representative a plaintiff who disobeyed. Sanctions such as these would not be available, however, against defendants and their counsel. With respect to them, contempt would seem to be the only available sanction.

**14.** Contempt here would be criminal because used to punish past misconduct. *In re Timmons*, 607 F.2d 120, 123–24 (5th Cir. 1979).

**15.** One who may be willing to violate a statute, and thus risk criminal penalties, may be less willing to act in direct defiance of an injunction or court order and thus subject himself to the

court's potential contempt power. *See In re Halkin, supra*, 598 F.2d at 184 n. 15; *Rodgers I, supra*, 508 F.2d at 161; *Kalven, supra*, 85 Harv. L.Rev. at 34 & n. 156; Note, 88 Harv.L.Rev. 1911, 1922 (1975).

**16.** Exception (2) in the second subparagraph of ¶ (2) permits communication between attorney and client, and between attorney and prospective client if on the initiative of a client or the prospective client. This provision concerning prospective clients is largely illusory; presumably, in a class action, a prospective client (class member) would often learn of the attorney from a present client (a named plaintiff), but here the present client is forbidden to talk to the prospective client.

issues in the suit were not covered by the conciliation agreement to which plaintiffs and putative class members were not parties and that the conciliation benefits to the putative class were inadequate. It stopped investigation and discovery at a time when it is critical, just after suit has been filed.

Fragile First Amendment rights are often lost or prejudiced by delay. *Nebraska Press Association v. Stuart, supra,* 427 U.S. at 609, 96 S.Ct. at 2826, 49 L.Ed.2d at 727 (Brennan, J., concurring); *Zwickler v. Koota,* 389 U.S. 241, 252, 88 S.Ct. 391, 397, 19 L.Ed.2d 444, 452 (1967); *Collin v. Smith,* 578 F.2d 1197, 1209 (7th Cir.), *cert. denied,* 439 U.S. 916, 99 S.Ct. 291, 58 L.Ed.2d 264 (1978); *A Quaker Action Group v. Hickel,* 421 F.2d 1111, 1116 (D.C.Cir.1969); Barnett, *The Puzzle of Prior Restraint,* 29 Stan.L. Rev. 539, 545 (1977). Courts have therefore been commendably willing to expedite proceedings involving First Amendment rights. *See New York Times Co. v. U. S., supra,* (Supreme Court decision issued 15 days after first TRO, 17 days after initial publication). Here, during the pendency of the conciliation offer, potential class members were substantially deprived [17] of the opportunity to confer with the attorneys presumably most knowledgeable, concerning whether they should accept Gulf's offer or look to the suit for redress. At the time they most needed counsel they were cut off from the attorneys most available until the time to make a choice had expired.[18]

The ban on communications is especially egregious both because this is a race discrimination case and because the counsel silenced without factual showing include those from the Legal Defense Fund, recognized by the Supreme Court as having "a corporate reputation for expertness in presenting and arguing the difficult ques-

tions of law that frequently arise in civil rights litigation," *NAACP v. Button,* 371 U.S. 415, 422, 83 S.Ct. 328, 332, 9 L.Ed.2d 405, 411–12 (1963), and engaged in "a different matter from the oppressive, malicious, or avaricious use of the legal process for purely private gain." *Id.* at 443, 83 S.Ct. at 343, 9 L.Ed.2d at 424. *See also Miller v. Amusement Enterprises, Inc.,* 426 F.2d 534, 539. n. 14 (5th Cir. 1970).

Faced with the principle that one who violates an injunction may not raise unconstitutionality as a defense in contempt proceedings, appellees construe the order to permit a defense to contempt. The constitutionally protected status of the proposed communication or the communicator's good faith belief in that status, appellees argue, would constitute a defense to contempt. This qualified defense is not found within the order but was read into it by the panel majority. 596 F.2d at 1261.

Even if this construction is correct, the defense is so freighted with preconditions and uncertainties that it is little comfort to attorney or party. Under appellees' construction, the filing requirement is a prerequisite to assertion of constitutionality, or good faith belief in constitutionality, as a defense.[19] Indeed it is only by the vehicle of the filing requirement that appellees read into the order a defense not otherwise available in a contempt case.[20] The filing requirement itself chills expression. With respect to the individual class members, filing within five days a "complete summary" of every oral communication about the case had by each class member with any of his black fellow employees, is a practical impossibility. Beyond that, knowledge of what may be constitutionally protected is not readily available to the usual employee. In a real sense, for the individual plaintiffs

---

**17.** *See* n. 16 *supra.*

**18.** The impact of the restraint in this case is exacerbated by the inevitable delay associated with appellate litigation. The court en banc decides this case almost four years after the ban on communications was entered.

**19.** *It is not contended that the act of filing is an absolute defense to contempt.* There would be

little purpose in entering an order with such a meaning.

**20.** Facially the filing requirement is nothing more than a means of notice to the court, unrelated to a defense of contempt. No one advances this interpretation, and we doubt it was intended.

silence is the only alternative. An attorney will have the knowledge, and better means, to file reports with the court as required, but if he asserts that he is constitutionally entitled to talk with prospective clients, ask financial aid, or seek support from a group or the community, filing will be a substantial burden. An attorney claiming a constitutional right to talk with witnesses could find compliance well nigh impossible. Also, the filing requirement arguably runs afoul of the attorneys' work product rule of *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

The conditional defense is accompanied by a second chilling effect, the risk of trial on criminal contempt charges, with guilt or innocence possibly turning on whether one's assertion of constitutional protection has been made in "good faith." Moreover, the omissions and ambiguities of the order and possible differing constructions as to when, if at all, one is protected against contempt, accentuate the chilling effect.[21]

Most attorneys, faced with an order like the one before us,[22] would pursue the course chosen by counsel in this case and seek prior approval of the court before attempting to communicate with actual or potential class members. *See In re Halkin, supra*, 598 F.2d at 184 n. 15; *Goldblum v. National Broadcasting Corp.*, 584 F.2d 904, 907 (9th Cir. 1979).

Thus despite the filing provision, and the arguable "good faith" defense, the order has the "immediate and irreversible" effect of a prior restraint.

### V. *The expression that is restrained is protected*

Inquiry does not end with a determination that the order constitutes a pri-

or restraint. The First Amendment is not absolute, and "the protection even as to previous restraint is not absolutely unlimited." *Near v. Minnesota, supra*, 283 U.S. at 716, 51 S.Ct. at 631, 75 L.Ed. at 1367; *accord, Times Film Corp. v. Chicago*, 365 U.S. 43, 81 S.Ct. 391, 5 L.Ed.2d 403 (1961); *Kingsley Books, Inc. v. Brown*, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957). Material unequivocally not protected by the Constitution may be the subject of a prior restraint if sufficient procedural safeguards are provided. This possibility does not exist in the present case because the communications proscribed by the order are constitutionally protected. Also, as discussed in Part VI, below, procedural safeguards are entirely lacking.

The restraint on counsel's right to talk with potential class members about the case is plenary. The restraint is not limited to prohibiting solicitation of potential clients. The attorneys may not counsel a black employee free of any effort to solicit him. We have already noted, at the beginning of Part IV, the concern expressed by the Third Circuit in *Rodgers I*, 508 F.2d at 162–63, 165, over the constitutional problems raised by conditioning access to class action procedures upon prohibiting communications between counsel and potential class members.

In addition to the general restraint on attorneys there is a specific restriction against solicitation in subparagraph (a) of ¶ (2) of the order which forbids "solicitation directly or indirectly of legal representation of potential and actual class members who are not formal parties to the class action." *NAACP v. Button, supra*, and its progeny, *In re Primus*, 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978), *United Transportation*

---

**21.** For example, in addition to the general ban on communications, subparagraph (a) of ¶ (2) expressly forbids solicitation. Prudent counsel very well may conclude that he cannot safely rely upon asserting constitutional protection in the face of this specific ban—if there is a "good faith" defense can counsel be in good faith if he does what he is expressly ordered not to do? As one commentator has noted:

The proviso exempting constitutionally-protected communication does not eliminate—

indeed it highlights—the overbreadth and resultant chilling effect of the Manual's proposed rule.

Note, 88 Harv.L.Rev. 1911, 1922 n. 74 (1975). *See also Zarate v. Younglove*, 22 FEP Cases 1025, 1042 (C.D.Cal.1980).

**22.** The deficiencies are present in both the order and the suggested local rule. *See* n. 6 *supra.*

*Union v. State Bar*, 401 U.S. 576, 91 S.Ct. 1076, 28 L.Ed.2d 339 (1971), *United Mine Workers v. Illinois Bar Association*, 389 U.S. 217, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967), and *Brotherhood of Railroad Trainmen v. Virginia State Bar*, 377 U.S. 1, 84 S.Ct. 1113, 12 L.Ed.2d 89 (1964), mandate the conclusion that subparagraph (a) proscribes constitutionally protected expression. In *Button*, the Court concluded that NAACP solicitation of persons to bring civil rights suits was protected activity under the First and Fourteenth amendments. 371 U.S. at 428–29, 83 S.Ct. at 335, 9 L.Ed.2d at 415.[23] The solicitation was treated as a mode of political expression effectuated through group activity falling with the sphere of associational rights guaranteed by the First Amendment. The solicitation activities considered in *Button* included holding meetings to explain legal steps needed to achieve desegregation. At these meetings forms were circulated which authorized Legal Defense Fund attorneys "to represent the signers in legal proceedings to achieve desegregation." 371 U.S. at 421, 83 S.Ct. at 332, 9 L.Ed.2d at 411.

In view of Gulf's statements to the trial court and the countering affidavit by plaintiffs' attorney, we do not know whether there has been express solicitation in this case similar to the distribution of forms in *Button*. Whether plaintiffs' attorneys' attendance at the meeting was solicitation is not determinative. Here, as in *Button*, the subject matter is racial discrimination. Plaintiffs' attorneys are already engaged on behalf of black employees in seeking to vindicate their civil rights through court action, while in *Button* they were seeking clients to begin a suit. In both cases the

activities at issue are those of Legal Defense Fund lawyers. The only material difference is that here employees must choose between the lawsuit and a conciliation offer while in *Button* there had been no conciliation and offer. The people attending the meetings held by the Legal Defense Fund lawyers in *Button*, however, did have to choose between initiating a lawsuit and not participating in a lawsuit. The type of choice the people would have to make here and in *Button* is not so different that the solicitation that could have occurred in this case was outside the scope of activity protected by *Button*. The characteristics of the solicitation that brought it within constitutional protection in *Button* are equally present in this case. *See also Great Western Cities, Inc. v. Binstein*, 476 F.Supp. 827 (N.D.Ill.1979) (holding rule similar to district court's order constitutionally inapplicable to non-profit solicitation).

The continued vitality of *Button* was recently affirmed by the Supreme Court in *In re Primus, supra*. There the Court reversed a disciplinary reprimand issued against an ACLU lawyer for solicitation. The Court considered the economic relationship between the lawyer and the person solicited, the purpose of the litigation and the possibility of a conflict of interest between counsel and prospective client. Because the lawyer had no direct financial stake in the case, and the case was a means of expressing a political belief, and there was no evidence of overreaching or misrepresentation, the Court concluded that South Carolina's punishment of Primus for solicitation violated her First Amendment rights.[24] Counsel for plaintiffs here have submitted affidavits attesting to the fact

---

**23.** Because this case involves a restriction imposed by a federal court, the Fourteenth Amendment is not implicated.

**24.** *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978), decided the same day as *Primus*, sustained, against constitutional objections, bar sanctions of an attorney for solicitation. For purely pecuniary gain, he visited in the hospital a person

injured in an automobile accident and solicited her as a client. No political expression or associational rights or vindication of illegal racial discrimination was involved. Ohralik based his constitutional claim solely on the commercial speech doctrine. *See also Pace v. Florida*, 368 So.2d 340 (Fla.1979); *Adler, Barish, Daniels, Levin & Creskoff v. Epstein*, 482 Pa. 416, 393 A.2d 1175 (Pa.1978).

that they neither received nor expect to receive from class members any compensation for their services.[25]

▉ Of course, the communications of individual plaintiffs, also proscribed by the order, are at least equally protected. *See Brotherhood of Railroad Trainmen v. Virginia State Bar, supra; Great Western Cities, Inc. v. Binstein, supra.*

The communications covered by the order are thus protected expressions which call into play the full panoply of First Amendment safeguards against prior restraint.[26]

VI. *The prior restraint is not justified*

The order in this case is the essence of prior restraint—it places specific communications under the personal censorship of a judge. It is thus subject to the heavy presumption against its constitutionality and the rigid requirements imposed by the courts on those who seek to justify prior restraints. It must fit within one of the narrowly defined exceptions to the prohibition against prior restraints. It must prevent direct, immediate and irreparable damage, and it must be the least restrictive means of doing so. Finally, it must comport with required procedural safeguards. The order at issue meets none of these requirements.

▉ There is a strong presumption against the constitutionality of any prior restraint, and the burden of justification is therefore heavier than that imposed in cases involving only subsequent restrictions on freedom of expression. *Southeastern Promotions, Ltd. v. Conrad, supra; New York Times Co. v. U. S., supra; Organization for a Better Austin v. Keefe, supra; Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963); *Near v. Minnesota, supra; Penthouse Int'l Ltd. v. McAuliffe, supra; Universal Amusement Co. v. Vance,* 587 F.2d 159 (5th Cir.), *aff'd,* —— U.S. ——, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980).

▉ In general, a prior restraint may be justified only if the expression sought to be restrained "surely [will] result in direct, immediate, and irreparable damage." *International Society for Krishna Consciousness v. Eaves,* 601 F.2d 809, 833 (5th Cir. 1979), *quoting New York Times Co. v. U. S., supra,* 403 U.S. at 730, 91 S.Ct. at 2149, 29 L.Ed.2d at 834. At least three justices may have rejected even that standard as overly lenient, without explicitly defining the appropriate test. *See New York Times Co. v. U. S., supra,* 403 U.S. at 732–33, 91 S.Ct. at 2150–51, 29 L.Ed.2d at 835 (White, J., joined by Stewart, J., concurring), and 403 U.S. at

**25.** Thus, subparagraph (b) of ¶ (2) of the order is not directly applicable. Arguably this hypothetical restraint does no injury except to the extent it adds to the overall chilling effect. However, it is appropriate to comment on it since it is part of the *Manual*'s form. In *United Transportation Union v. State Bar, supra,* the Supreme Court interpreted *Button* and cases following it to stand for the proposition that "collective activity undertaken to obtain meaningful access to the courts is a fundamental right within the protection of the First Amendment." *Id.* at 585, 91 S.Ct. at 1082, 28 L.Ed.2d at 347. In at least some situations the collection or solicitation of funds to defray litigation costs is a necessary adjunct to obtaining meaningful access to the courts. Such activity is therefore deserving of constitutional protection in appropriate cases. The degree of protection would vary according to the use to which the funds are to be put. If they are to be used to pay lawyers, the solicitation is closer to the heart of gaining access to the courts. *See Norris v. Colonial Commercial Corp.,* 77 F.R.D.

672, 673 (S.D.Ohio 1977) (solicitation of funds to defray litigation expenses of class action permitted with certain requirements imposed on the content of the solicitation letter). *See also Sayre v. Abraham Lincoln Federal Savings & Loan Ass'n,* 65 F.R.D. 379, 384–86 (E.D.Pa. 1974), *modified,* 69 F.R.D. 117 (1975); *see generally* Note, *Solicitation By Attorneys: A Prediction and a Recommendation,* 16 Houston L.Rev. 452 (1979).

**26.** We do not discuss at length the plenary provisions of subparagraph (d) of ¶ (2) concerning statements tending to misrepresent. That section merely compounds the unconstitutionality exhibited by the preceding sections by adding vagueness and overbreadth to its defects. *See Hirschkop v. Snead,* 594 F.2d 356 (4th Cir. 1979) (en banc); *Zarate v. Younglove,* 22 FEP Cases 1025, 1042 (C.D.Cal.1980); *U. S. v. Marcano Garcia,* 456 F.Supp. 1354 (D.P.R. 1978); Note, 88 Harv.L.Rev. 1911, 1922 n. 74 (1975).

740–41, 91 S.Ct. at 2154–55, 29 L.Ed.2d at 840 (Marshall, J., concurring).[27]

To be lawful, the restraint "must fit within one of the narrowly defined exceptions to the prohibition against prior restraints," *Southeastern Promotions, Ltd. v. Conrad, supra,* 420 U.S. at 559, 95 S.Ct. at 1247, 43 L.Ed.2d at 459; that is, "[the] publication [sought to be restrained] must inevitably, directly, and immediately cause the occurrence of an event kindred to imperiling the safety of a transport already at sea . . . ." *New York Times Co. v. U. S., supra,* 403 U.S. at 726–27, 91 S.Ct. at 2148, 29 L.Ed.2d at 832 (Brennan, J., concurring); *see also Whitney v. California,* 274 U.S. 357, 377, 47 S.Ct. 641, 71 L.Ed. 1095, 1106 (1927) (Brandeis, J., concurring) ("Only an emergency can justify repression"). Indeed, one commentator has interpreted *New York Times v. U. S.* to hold that "there is a constitutional requirement that everything, or virtually everything, is entitled to be published at least once." Kalven, *supra,* 85 Harv.L.Rev. at 34.

The order is not brought within any exception permitting prior restraints merely because it arises in the general context of the administration of justice and the particular context of Rule 23. As the Third Circuit noted in *Rodgers I*: "[T]he interest of the judiciary in the proper administration of justice does not authorize any blanket exception to the first amendment." 508 F.2d at 163. It is obvious that in the conduct of trial the judge restrains expression and association in innumerable ways. But, "[w]hatever may be the limits of a court's powers in this respect, it seems clear that they diminish in strength as the expressions and associations sought to be controlled move from the courtroom to the outside world." *Id.*

27. Justices Black and Douglas, adhering to their consistent rejection of any restriction on freedom of expression, also found the standard unacceptable. 403 U.S. at 714, 720, 91 S.Ct. at 2141, 2144, 29 L.Ed.2d at 825, 828.

The Supreme Court has recently reaffirmed that even when the competing interest is a criminal defendant's right to a fair trial, "the barriers to prior restraint remain high and the presumption against its use continues intact." *Nebraska Press Association v. Stuart, supra,* 427 U.S. at 570, 96 S.Ct. at 2808, 49 L.Ed.2d at 704. Other courts, including this one, have echoed this sentiment. "[B]efore a prior restraint may be imposed by a judge, even in the interest of assuring a fair trial, there must be 'an imminent, not merely a likely, threat to the administration of justice. The danger must not be remote or even probable; it must immediately imperil.'" *U. S. v. Columbia Broadcasting System, Inc.,* 497 F.2d 102, 104 (5th Cir. 1974). A lawyer's First Amendment right to comment about pending or imminent criminal litigation can be proscribed only if his comments pose a "'serious and imminent threat' of interference with the fair administration of justice." *Chicago Council of Lawyers v. Bauer, supra,* 522 F.2d at 249, *quoting In re Oliver,* 452 F.2d 111 (7th Cir. 1971). Even in the context of a criminal defendant's right to a fair trial, then, prior restraint is "the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Association v. Stuart, supra,* 427 U.S. at 559, 96 S.Ct. at 2803, 49 L.Ed.2d at 697.

If the exigencies of the Sixth Amendment do not lessen the burden on those who seek to justify prior restraints, the interests of a civil litigant cannot do so. *See Hirschkop v. Snead, supra,* 594 F.2d at 373. The "interest of the judiciary in the proper administration of justice does not authorize any blanket exception to the first amendment." *Rodgers I, supra,* 508 F.2d at 163. Thus, the general presumption against prior restraints is not mitigated by a claim that the fair and orderly administration of justice is at stake.[28]

28. We must distinguish two types of cases as only peripherally relevant to the inquiry at hand. *Craig v. Harney,* 331 U.S. 367, 67 S.Ct. 1249, 91 L.Ed. 1546 (1947), and *Bridges v. California,* 314 U.S. 252, 62 S.Ct. 190, 86 L.Ed. 192 (1941), and their progeny limited the circumstances under which courts may impose con-

Nor does Rule 23, as a specific aspect of the administration of justice, create an exception to the principles governing prior restraints.[29] See Rodgers v. U. S. Steel Corp., 536 F.2d 1001, 1008 (3d Cir. 1976) (Rodgers II) (suggesting, in context of class action, that test is "clear and present danger or a reasonable likelihood of a serious and imminent threat to the administration of justice"). The validity of a prior restraint entered under Rule 23 must be tested by the same standards utilized in other contexts. Subdivision (d) of Rule 23, which authorizes the court, in its discretion, to make appropriate orders in class actions, was designed to further "the fair and efficient conduct of the action . . . ." Advisory Committee Notes to Rule 23. Like the common law contempt power at issue in Craig v. Harney, 331 U.S. 367, 67 S.Ct. 1249, 91 L.Ed. 1546 (1947), and Bridges v. California, 314 U.S. 252, 62 S.Ct. 190, 86 L.Ed. 192 (1941), the court's discretion under Rule 23 is a facet of its general authority to regulate the conduct of litigation. To the extent that Rule 23 implements the class action as a unique litigation device, that discretion may be correspondingly broadened, and we recognize broad management powers of the court under Rule 23. But, while a legislative enactment may alter the court's authority under common law, it may not encroach upon constitutionally protected rights. Prior restraints are no less suspect in a statutory setting than they are in a constitutional context. Allen v. Monger, 583 F.2d 438, 442 (9th Cir. 1978), pet. for cert. filed sub nom., Brown v. Allen, —— U.S. ——, 100 S.Ct. 1003, 62 L.Ed.2d 745 (1978). We cannot interpret Rule 23 as authorizing prior restraints without rewriting the First Amendment and the gloss put upon it by the Supreme Court. This, of course, we are not at liberty to do. Moreover, the Rules Enabling Act, 28 U.S.C. § 2072, explicitly provides that the Rules "shall not abridge, enlarge or modify any substantive right." Finally, much of the communication prohibited by the order is both constitutionally protected and consistent with the purposes of the class action. See Coles v. Marsh, 560 F.2d 186, 189 (3d Cir.), cert. denied, 434 U.S. 985, 98 S.Ct. 611, 54 L.Ed.2d 479 (1977); n.30 infra.

An exception to the constitutional principles limiting prior restraints cannot be constructed on the foundation of asserted potential abuses in class actions generally. In the first place, the hypothesis that abuses occur with such frequency and impact that prophylactic judicial intervention is required must be examined with the same scrutiny as other factual hypotheses. Neither the Constitution nor the judge's duty of constitutional fact finding is subsumed by the application of the pejorative

tempt sanctions for free expression that is subsequently deemed prejudicial to the administration of justice. Because the contempt in those cases was not based on violation of an explicit order, however, the cases "deal with problems substantially different from those raised by prior restraint." Nebraska Press Ass'n v. Stuart, supra, 427 U.S. at 557 n.5, 96 S.Ct. at 2802, 49 L.Ed.2d at 696 n.5; see also Rodgers v. U. S. Steel Corp., 536 F.2d 1001, 1008 n.15 (3d Cir. 1976) (Rodgers II); Schmidt, Nebraska Press Association: An Expansion of Freedom and Contraction of Theory, 29 Stan.L.Rev. 431, 472 (1977). Thus, the Manual's conclusion that Craig and Bridges authorize the suggested order, Part 1, § 1.41 n.33 (1977 ed.), is mistaken insofar as the order is a prior restraint and governed by a more stringent standard. See Wilson, Control of Class Action Abuses Through Regulation of Communications, 4 Class Action Reports 632, 634 (1975).

We also find Gannett Co. v. DePasquale, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979), and its antecedents inapposite. We are dealing here not with the right of reporters to gather information but with the right of individuals to disseminate it. See, e. g., Houchins v. KQED, Inc., 438 U.S. 1, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978); U. S. v. Gurney, 558 F.2d 1202 (5th Cir. 1977), cert. denied, 435 U.S. 968, 98 S.Ct. 1606, 56 L.Ed.2d 59 (1978). Protecting secrecy by excluding the press is not to be equated with preventing publication. See Sack, Principle and Nebraska Press Association v. Stuart, 29 Stan.L.Rev. 411, 428 (1977); Stevens, Some Thoughts About A General Rule, 21 Ariz.L.Rev. 599 (1979).

**29.** The district court never certified a class in this case. Arguably a court may have broader power over an actual class action than a putative class action, but the presence or absence of certification does not materially affect the considerations that we view as controlling.

word "abuse." Not everything that tends to make a class action less convenient than ideal, or more difficult to manage, is an "abuse." The same is true of such activities as solicitation of clients, or funds, or community support, that may be constitutionally protected but, at least to some, may appear only marginally ethical.[30] The frequency and the effect of genuine abuses in class actions in general are not revealed by any empirical data made known to us, and judges may differ widely in their individual assessments. The *Manual* expressly recognizes that "abuse" of the class action is a rare occurrence, an exception and not the rule:

It must be noted, however, that, generally, the experience of the courts in class actions has been favorable. The aforementioned abuses are the exceptions in class action litigation rather than the rule. Nevertheless, they support the idea that it is appropriate to guard against the occurrence of these relatively rare abuses by local rule or order.

*Manual*, Part I, § 1.41, p. 31 (1977 ed.). Its rationale is that it is desirable to anticipate and prevent these infrequent occurrences before they happen.[31]

In any event, the potential abuse rationale is at odds with the requirement that a prior restraint is only justified in exceptional circumstances and by a showing of direct, immediate and irreparable harm. Whether such a showing can be made may be affected by a host of factors: the occurrence of misconduct or the threat of it, the composition and size of the class, the nature of the claim, the historical policies of the district court in administering class actions, the identity, experience and standards of the lawyers, the mores of the bar, the necessity for discovery and many others. None of the four major potential abuses listed by the *Manual* presents any direct or immediate threat to the litigation in this case. Solicitation of clients is protected here under *Button* and *Primus. See* pp. 471–473, *supra.* The possibility of solicitation of funds is controverted by affidavits. *See* n. 25 *supra.* Solicitation of opt-out requests is not relevant to this Rule 23(b)(2) case. Finally, nothing justifies any inference in this case that communications are likely to "misrepresent the status, purposes and effects of the . . . action and of . . . [the] Court orders therein."

There are other prerequisites to justification of a prior restraint. It must not sweep too broadly. Rather it "must be narrowly drawn and cannot be upheld if reasonable alternatives are available having a lesser impact on First Amendment freedoms." *CBS, Inc. v. Young*, 522 F.2d 234, 238 (6th Cir. 1975); *see also Nebraska Press Association v. Stuart, supra; Carroll v. Commissioners of Princess Anne*, 393 U.S. 175, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968). There are alternatives to a total ban on communications. *See* n.13 *supra; Developments in the Law—Class Actions*, 89 Harv. L.Rev. 1318, 1600–1604 (1976); Wilson, *Control of Class Action Abuses Through Regulation of Communications*, 4 Class Action Reports 632 (1975). The order before us suppresses essentially everything, and one seeking to exercise his right to speech or

---

**30.** In *Coles v. Marsh*, 560 F.2d 186 (3d Cir.), cert. denied, 434 U.S. 985, 98 S.Ct. 611, 54 L.Ed.2d 479 (1977), a race/sex discrimination in employment case, the basis for an order banning communication by plaintiff and her lawyer was plaintiff's deposition in which she indicated that she had contacted and would continue to contact potential class members with the hope of interesting them in participating in the suit and had contacted the NAACP to enlist its support, financial and otherwise, and proposed to contact other organizations for the same purpose. The Third Circuit rejected the argument that these were abuses and held they effectuated the purposes of Rule 23 by encouraging participation in plaintiff's race/sex discrimination claim and that the district court had no power to restrain them.

**31.** *Compare Bulletin of Recent Developments, Manual for Complex Litigation*, Aug. 25, 1978, p. 7:

Experience continues to teach that, because of the vast and ever-present potential for abuse of the class action through unauthorized communications in many unpredictable forms, it is dangerous to await the occurrence of an abuse before trying to correct it.

association must petition the court.[32] No showing has been made, or even offered, that reasonable alternatives with lesser impact are unavailable.

Finally, the restraint "must have been accomplished with procedural safeguards that reduce the danger of suppressing constitutionally protected speech." *Southeastern Promotions, Ltd. v. Conrad, supra,* 420 U.S. at 559, 95 S.Ct. at 1247, 43 L.Ed.2d at 459. There are none here: no evidence, no way to test the potential abuse premise, no findings of particular abuses present or threatened, and no conclusions of law (except as to the desirability of conciliation). Obviously, there never can be procedural safeguards if by rule or order a wholesale restraint is directed in every case and those restrained are able to escape its impact only by showing good cause to be excepted or risking the vagaries of an arguable good faith defense.

The remaining justification for the order is the district judge's reference to his obligations to encourage private settlement of Title VII charges. *U. S. v. Allegheny-Ludlum Industries,* 517 F.2d 826, 846 (5th Cir. 1975), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976). The notice sent by the clerk gave judicial recognition to the conciliation agreement and extended the time during which employees could accept Gulf's offer, while at the same time giving notice of the pendency of this suit. But, as we noted in *Allegheny-Ludlum,*

the "final responsibility for enforcement of Title VII is vested with federal courts," . . . [T]he various legal remedies for employment discrimination

are cumulative and complementary. From the grievant's standpoint, "[u]nder some circumstances, the administrative route may be highly preferred over the litigatory; under others the reverse may be true."

*Id.* at 848 & n.26, *quoting Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 44, 94 S.Ct. 1011, 1017, 39 L.Ed.2d 147, 156 (1974), and *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 461, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295, 302 (1975). In *Rodriguez v. East Texas Motor Freight,* 505 F.2d 40 (5th Cir. 1974), *vacated on other grounds,* 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977), we commented on the possible divergence of governmental interests in remedying employment discrimination and the interests of the individuals who were the victims of discrimination:

While the Government may be willing to compromise in order to gain prompt, and perhaps nationwide, relief, private plaintiffs, more concerned with full compensation for class members, may be willing to hold out for full restitution.

*Id.* at 66. The choice between the lawsuit and accepting Gulf's back pay offer and giving a general release was for each black employee to make. The court could not make it for him, nor should it have freighted his choice with an across-the-board ban that restricted his access to information and advice concerning the choice.

We therefore hold that the district court's order restricting communication by parties and their counsel with actual and potential class members is an unconstitutional prior restraint.[33] This holding

---

**32.** It is obvious that overbreadth is inevitable under a system by which plenary restraints are imposed automatically by rule or order in every actual or potential class action.

**33.** While we hold that the order is a prior restraint, the unconstitutionality of the order does not rest on that ground alone. Even under the more relaxed analysis accorded subsequent restraints the order fails to pass constitutional muster. Much of the order is vague and overbroad. *See* n.26 *supra*; *see also Chicago Council of Lawyers v. Bauer,* 522 F.2d 242, 249 (7th Cir. 1975), *cert. denied,* 427 U.S. 912, 96

S.Ct. 3201, 49 L.Ed.2d 1204 (1976). Even a legitimate governmental purpose "cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved." *Shelton v. Tucker,* 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231, 237 (1960); *see also Village of Schaumberg v. Citizens for a Better Environment,* —— U.S. ——, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980) (restriction invalid if purpose "could be sufficiently served by measures less destructive of First Amendment interests"). Moreover, the circumstances under which the order was is-

makes it unnecessary for us to consider whether the order violates the First Amendment associational rights of either the individual plaintiffs or their attorneys. *See Rodgers I, supra,* 508 F.2d at 163; *Great Western Cities, Inc. v. Binstein, supra,* 476 F.Supp. at 834; *cf. NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958) (requiring NAACP to submit membership lists infringes associational rights); *Shelton v. Tucker,* 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960) (requiring list of organizations to which individual belongs or contributes infringes associational rights); *Robinson v. Reed,* 566 F.2d 911 (5th Cir. 1978) (requiring disclosure of facts about beliefs or associations infringes rights of privacy and association).[34]

## VII. *The order violates Rule 23*

■ Because we hold that the order violates the First Amendment, it follows that it cannot be an "appropriate order" under Rule 23(d) of the Federal Rules of Civil Procedure.[35]

The order of the district court restricting communications by named plaintiffs and their counsel with actual and potential class

members is VACATED, the judgment of the district court is REVERSED and the case is REMANDED to the district court for proceedings consistent with this opinion.

TJOFLAT, Circuit Judge, with whom JOHN R. BROWN, GEE, HENDERSON and REAVLEY, Circuit Judges, join, specially concurring:

I concur only in the result because I believe the majority's analysis inexcusably ignores the principle that "a federal court should not decide federal constitutional questions where a dispositive nonconstitutional ground is available." *Hagans v. Lavine,* 415 U.S. 528, 547, 94 S.Ct. 1372, 1384, 39 L.Ed.2d 577 (1974). The non-constitutional ground that would dispose of the case is that the district court abused its discretion when, without making any findings of fact, it entered the order restricting the parties' and counsel's communications with actual or potential class members who were not formal parties.

The majority's analysis begins with an examination of the "basis" of the order. The opinion immediately rejects the notion that the district court's order could have

---

sued do not meet any of the previously articulated standards governing restriction of constitutionally protected expression. *See, e. g., Village of Schaumberg v. Citizens for a Better Environment, supra* (regulation "intimately related to substantial governmental interests"); *Hess v. Indiana,* 414 U.S. 105, 94 S.Ct. 326, 38 L.Ed.2d 303 (1973) (speech "intended to produce, and likely to produce, *imminent* disorder"); *Brandenburg v. Ohio,* 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969) (speech "brigaded with action") (Douglas, J., concurring); *Bridges v. California,* 314 U.S. 252, 62 S.Ct. 190, 86 L.Ed. 192 (1941) ("clear and present danger"); *Chicago Council of Lawyers v. Bauer, supra* (speech must pose " 'serious and imminent threat' of interference with the fair administration of justice").

**34.** We have also pretermitted discussion of the order's limitations on access to and dissemination of discovery materials as possibly implicating both the First Amendment, *In re Halkin, supra,* 598 F.2d at 188–89, and the due process clause of the Fifth Amendment, *Gouldman v. Seligman & Latz of Houston, Inc.,* 82 F.R.D. 727, 728 (S.D.Tex.1979). *See Waldo v. Lakeshore Estates, Inc.,* 433 F.Supp. 782, 787 (E.D. La.1977); Note, 88 Harv.L.Rev. 1911, 1919

(1975). The *Manual* itself notes the risk that barring contact with class member-witnesses may violate due process:

> In many such cases, the class members will have knowledge of facts relevant to the litigation and to require a party to develop the case without contact with such witnesses may well constitute a denial of due process. *Manual,* Part I, § 1.41, p. 29 (1977, carried forward from 1973 ed.).

Additionally, we have not considered whether the order may violate the Fifth Amendment privilege against *self-incrimination* by compelling those who may have disobeyed it to produce testimonial evidence describing their transgressions. *See U. S. v. White,* 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944); *U. S. v. Authement,* 607 F.2d 1129 (5th Cir. 1979).

**35.** Other circuits have reached conflicting conclusions as to the propriety under Rule 23 of similar orders. *Compare Rodgers I, supra with In re General Motors Corp. Engine Interchange Litigation,* 594 F.2d 1106, 1138 n.57 (7th Cir.), *cert. denied,* 444 U.S. 870, 100 S.Ct. 146, 62 L.Ed.2d 95 (1979).

rested on Gulf Oil Company's unsworn allegations that one of the plaintiffs' attorneys had improperly communicated with actual or potential class members who were not formal parties: "We can assume that the district court did not ground its order on a conclusion that the charges of misconduct made by Gulf were true. Nothing in its order indicates that it did . . . ." *Ante* at 466. Even if the district court *had* based its order on a conclusion that Gulf's charges were true, the opinion reasons, "such a conclusion would have been procedurally improper and without evidentiary support." *Id.* Therefore, the majority "presumes" that the district court must have based its order "upon the rationale of the [*Manual for Complex Litigation*] that the court has the power to enter a ban on communications in any actual or potential class action as a prophylactic measure against potential abuses envisioned by the *Manual.*" *Id.* ·

Logic and sound jurisprudence insist that the majority next consider the procedural propriety and evidentiary support of an order founded solely on the rationale and model order of the *Manual*. Instead, the opinion inexplicably leaps to the question of the constitutionality of the *Manual*'s suggested order and holds that the order is an unconstitutional prior restraint. Since the district court's order was based entirely on the model order and policy considerations set out in the *Manual*, it follows that the district court's order is unconstitutional as well. The opinion then belatedly and, in light of the disposition of the constitutional issue, somewhat gratuitously turns to the question of procedural propriety, concluding that an unconstitutional order cannot be "appropriate" within the meaning of Fed.R. Civ.P. 23(d).

In my view, the federal policy of avoiding unnecessary constitutional rulings requires that this court reserve consideration of the first amendment problems that the district court's order may raise and address first the question of the district court's authority to issue the order. As Judge Godbold persuasively demonstrates in his dissenting opinion to the panel decision, the district

court misused its discretion in entering the order in this case. *Bernard v. Gulf Oil Co.*, 596 F.2d 1249, 1262–76, *vacated*, 604 F.2d 449 (5th Cir. 1979) (Godbold, J., concurring in part and dissenting in part). Therefore, we need not reach the constitutional question.

Rule 23(d) permits district courts, in conducting class actions, to "make appropriate orders: . . . (3) imposing conditions on the representative parties . . . ." Although this provision gives a district court "extensive power" to manage a class action, 7A C. Wright & A. Miller, Federal Practice and Procedure § 1791 at 192 (1972), the orders that a court issues pursuant to the rule are certainly subject to review for abuse of discretion. *In re Nissan Motor Corporation Antitrust Litigation*, 552 F.2d 1088, 1096 (5th Cir. 1977). As this court observed in *Nissan*, "Appellate review is necessary to assure that the rights of absentee class members are not inundated in the wake of a district court's brisk supervision." *Id.* The reviewability of rule 23(d) orders is also implicit in the language of the rule. The district court is limited to issuing those orders that are "appropriate." If this constraining language is to be effectual, rule 23(d) orders must be reviewable by the courts of appeals.

Since rule 23(d) orders are reviewable, it follows that such orders must be based on findings of fact:

> [I]ssuance of an order . . . without an adequate statement of the reasons for the order does not meet minimum standards of procedural fairness and regularity. . . . Nor does an order issued without a deliberate articulation of its rationale, including some appraisal of the factors underlying the court's decision, allow for a disciplined and informed review of the court's discretion.

*Sargeant v. Sharp*, 579 F.2d 645, 647 (1st Cir. 1978) (citations omitted) (vacating and remanding district court's order denying attorney fees to successful civil rights plaintiff). *Cf.* Fed.R.Civ.P. 52(a) ("in granting or refusing interlocutory injunctions the

court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action").

The general principle restated by the *Sargeant* court applies to any court order that is based on the court's assessment of conflicting evidence or policy considerations. I see no reason to suppose that the principle is not pertinent here. A request for a rule 23(d) order restricting communications between counsel and potential or actual class plaintiffs is not essentially different from an ordinary petition for a preliminary injunction.[1] Communications like those prohibited by the district court's order certainly create a potential for abuse, but they may also be beneficial. For example, such communications, "in many instances serve to effectuate the 'purposes of Rule 23 by encouraging common participation in [a lawsuit].' " *Bernard v. Gulf Oil Co.*, 596 F.2d at 1268 (Godbold, J., dissenting) (*quoting Coles v. Marsh*, 560 F.2d 186, 189 (3d Cir.), *cert. denied*, 434 U.S. 985, 98 S.Ct. 611, 54 L.Ed.2d 479 (1977). Just as if it had been faced with a request for an injunction, the district court should have ruled on Gulf's motion for an order restricting communications only after weighing, on the record, the potential for abuse that would be generated by permitting free communications between the parties and class members against the benefits flowing from such communications. As in the ordinary case involving a request for a temporary injunction, the burden of proof would be on the movant—here, Gulf. To meet its burden of proof, Gulf would have to make "a factual showing . . . that unsupervised communications between counsel and named plaintiffs on one hand and potential class members on the other have materialized into actual abuses of the class action device or that abuses are imminently threatened."

*Bernard v. Gulf Oil Co.*, 596 F.2d at 1267 (Godbold, J., dissenting).

As the majority opinion notes, the district court entered the order in this case without making any findings of fact. The only "evidence" Gulf presented that the restricted communications would lead to abuses was unsworn allegations of misconduct on the part of one of the class attorneys, and the accused attorney denied the charge under oath. Even if the district court had explicitly based its order on Gulf's charges, I would find that entry of the order was an abuse of discretion on the ground that Gulf had not conceivably met its burden of proof. It is still more clear that the Court abused its discretion by issuing the order without elucidating *any* factors that contributed to its decision.

The absence of any findings of fact leads the majority to conclude that the district court founded its order on the *Manual for Complex Litigation*'s model order and rationale. *Ante* at 466. In my view, the record does not adequately support this conclusion. The district court cited the *Manual* not to justify the imposition of the order, but to defend the order from plaintiffs' First Amendment attack: "[T]his order comports with the requisites set out in the *Manual for Complex Litigation*, Section 1.41, p. 106 CCH Edition 1973, which specifically exempts constitutionally protected communication when the substance of such communication is filed with the Court." *Record* at 128e. The court's mere mentioning of the *Manual* obviously does not constitute the deliberate articulation of rationale that is necessary if there is to be any possibility of meaningful review.

Moreover, even if the court had relied explicitly on the rationale of the *Manual*'s model order to support the order, the

1. Judge Godbold makes this point nicely in his panel dissent:

The wide disparity between what was done here and normal judicial procedures is demonstrated by posing this question: "What would have happened if Gulf had asked for a temporary injunction imposing the exact restrictions that were imposed in this case?" I believe that the court would have insisted

upon requirements of notice, time limits, proof of likelihood of harm, the public interest and similar familiar requirements, and this court would have reviewed an injunction under the usual standards, especially since constitutional rights are involved. *Bernard v. Gulf Oil Co.*, 596 F.2d 1249, 1270, *vacated* 604 F.2d 449 (5th Cir. 1979) (Godbold, J., concurring in part and dissenting in part).

court's entry of the order would have been procedurally improper. The *Manual* is not a source of authority with the force of a statute or rule of civil procedure. Therefore, a trial court could not evade its responsibility to make findings of fact on the record simply by relying on the *Manual.* In other words, it would have been an abuse of discretion for the court to have adopted the *Manual*'s apparent conclusion that a court order restricting communications is appropriate in *every* class action. This is because the validity of the *Manual*'s analysis and conclusion is not the sort of undisputed knowledge that would justify what would be, in effect, judicial notice. Since there is reason to believe that communications between counsel and actual and potential class members are not *always* abusive of the class action device, "[t]he *Manual*'s general discussion of potential abuses flowing from unrestrained communications is no substitute for reasoned inquiry into the harms and benefits on the particular facts of each case." *Bernard v. Gulf Oil Co.*, 596 F.2d at 1268 (Godbold, J., dissenting).[2]

For the reasons I have stated, I would hold that the district court abused its discretion when it entered the order restricting communications. I think this conclusion is unavoidable, whether the order is viewed as based upon the trial judge's assessment of the particular case before him or as based on the *Manual*'s general discussion of potential abuses. Therefore, I must regard the majority's first amendment analysis as a needless excursion into a difficult and little-explored area of constitutional law.[3]

FAY, Circuit Judge, with whom COLEMAN, Chief Judge, and RONEY, Circuit Judge, join, special concurring statement:

The majority of the *en banc* court adopts parts I, II and III of the panel opinion found at 596 F.2d 1249. As to the order dealing with communications by named parties and their counsel with any actual or potential class member not a formal party, I adopt parts I and II of Judge Godbold's original opinion, concurring in part and dissenting in part from the panel majority. 596 F.2d at 1262. In my opinion the order was "inappropriate" under Rule 23 and an abuse of discretion in this case. So concluding, I would not reach the constitutional issues.

JAMES C. HILL, Circuit Judge, dissenting:

I cannot agree that an order restricting the conduct of attorneys and their clients in connection with an ongoing lawsuit should be scrutinized under the First Amendment. I believe that during the pendency of a lawsuit the judge may restrict speech and conduct which in a different setting would be protected by the First Amendment. A precedent which requires that such orders be scrutinized under the First Amendment is a dangerous one with the potential for consequences not intended by the majority.

The propriety of this order should be tested only under Rule 23's appropriateness standard. Under the facts of this case, I would hold that the order was appropriate.

**2.** Of course, there are some communications that a court may restrict, in the interests of the administration of justice, without making findings or even considering the facts of the particular case. For example, a trial judge may certainly instruct members of the jury not to discuss a case with anyone while the trial is in progress. The crucial difference between this example and the case before us is that, first amendment considerations aside, there could be no purpose served by permitting the jury to discuss a case during the trial, while it is not open to question that such communications would always pose an imminent threat to the fair administration of justice. On the other hand, communications like those enjoined in the present case might actually benefit the judi-

cial process through serving the rule 23 policy of encouraging common participation in a lawsuit. *See* p. 464, *supra.*

**3.** Although the majority concludes that the order in this case was an unconstitutional prior restraint, the opinion certainly does not preclude a district court's entering an order similar to the *Manual*'s model order after making a proper finding of facts. The majority condemns only restrictions of communications "constructed on the foundation of asserted potential abuses in class actions generally," *ante* at 475, and admits that a "prior restraint" may be justified "by a showing of direct, immediate and irreparable harm." *Ante* at 476.