**IMPERVIOUS PAINT INDUSTRIES, INC. et al., Plaintiffs,**

v.

**ASHLAND OIL et al, Defendants.**

Civ. A. Nos. C 78–0068 L(A), C 78–0069 L(A) and C 79–0656 L(A).

United States District Court,
W. D. Kentucky,
Louisville Division.

Feb. 9, 1981.

Lowell E. Sachnoff, Arnold Pagniucci, Chicago, Ill., Barry F. Schwartz, Roberta D. Liebenberg, Burt Rublin, Denise D. Colliers, Seymour Kurland, Wolf, Block, Schorr & Solis-Cohn, Galen J. White, Jr., Robert Stopher, Louisville, Ky., for plaintiffs.

K. Gregory Haynes, Louisville, Ky., and Ray S. Bolze, William J. Hunter of Howrey & Simon, Washington, D. C., for Ashland Oil.

Erwin C. Heininger and James Gladden, Chicago, Ill., and Gerald Kirven, Louisville, Ky., for Cargill, Inc.

William R. Burke, Jr., Houston, Tex., and James D. Moyer, Louisville, Ky., for Zapata-Haynie.

C. Gibson Downing, Lyle Robey, Lexington, Ky., for Koppers.

Robert W. Sayre, James G. Rosenberg, Philadelphia, Pa., and Richard W. Iler, Louisville, Ky., for McCloskey.

Raymond W. Midgett, Arthur E. Newbold, Philadelphia, Pa., and George Reycraft, John Boyer and J. David Officer, New York City, for Reichhold Chemicals.

Wesley P. Adams, Jr., Louisville, Ky., and John G. Harkins, Pepper Hamilton & Scheetz, Philadelphia, Pa., for Reliance Universal.

Donald H. Balleisen, John Reed, Louisville, Ky., and John Russell Phillips, Kansas City, Mo., for Cook Paint & Varnish.

Robert V. Abendroth, Milwaukee, Wis., and W. Robert Lotz, Jr., Covington, Ky., for Freeman Chemical.

Jack E. Ruck, Louisville, Ky., for Reichhold.

James Pitt, Libertyville, Ill., and Kenneth L. Anderson, Louisville, Ky., for IMC.

Henry Sailor, Gary Reback, Washington, D. C., and James C. Hickey, Louisville, Ky., for Spencer-Kellog.

James E. Masterson, Millburn, N. J., for Syncon Resin.

Martin Schneider, New York City, and Jack P. Reisz, Louisville, Ky., for Syrnes Chemical.

James Tobin, Columbus, Ohio, William H. Baughman, Jr., Cleveland, Ohio, and Samuel Manly, Louisville, Ky., for Yenkin-Majestic.

## MEMORANDUM OPINION

ALLEN, Chief Judge.

These consolidated multiple-defendant civil anti-trust actions are proceeding by way of class action. Although the senior action was filed in the Eastern District of Pennsylvania in late 1977 and transferred to this Court in early 1978, procedural problems have slowed the progress of the suit such that notice to the more than 1,300 class members has only recently been sent. The present submission arises from alleged impropriety on the part of one of the defendants with regard to contacts of class members. After careful consideration, we are of the opinion that such impropriety has been shown, and appropriate remedies must be devised.

With the participation of all counsel, the Court has relied heavily on the advice of the Manual for Complex Litigation, hereinafter, the Manual. At the time of certification of the plaintiff class, the Court entered the standard "communications ban" type of order, designed to prevent potential abuses of class actions. This order, the language of which was similar to that in the Appendix to the Manual, Section 1.41, required court approval prior to contact of class members

by parties or counsel. Subsequently, however, certain defendants moved to vacate that portion of the class action order setting forth the "communications ban," citing in support of their motion the *en banc* decision in *Bernard v. Gulf Oil Company*, 619 F.2d 459 (5th Cir. 1980). The Court agreed with the reasoning of *Bernard* that the standing order was broader than the First Amendment permits, and vacated the communications ban.

As part of the order vacating the communications restriction, however, the Court directed counsel's attention to The American Bar Association's Code of Professional Responsibility, (the Code), specifically to both sections of DR 7–104. As set forth in Rule 2 of the Local Rules for the Western District of Kentucky, the Code is a part of the standard of conduct required of attorneys practicing before this Court.

The present controversy arose when plaintiffs' counsel became aware that representatives of defendant Reichhold Chemicals, Inc., (Reichhold), had begun a process of contacting class members for the purpose of discussing these lawsuits and the class members' part therein. As these contacted class members were Reichhold's customers, plaintiffs filed a motion for injunctive relief to prevent Reichhold from threatening or intimidating class members. A hearing was scheduled immediately, and the concerned parties submitted a large number of affidavits.

Plaintiffs' allegations regarding threats of commercial retaliation were dismissed. They were supported only by hearsay reports, plaintiffs' counsel reporting that they had received telephone calls from class members who either refused to identify themselves or insisted on anonymity before they would detail the nature of the threats. Of course, the allegation of such threats or intimidation is a very serious one which requires careful attention, but the evidence presented is insufficient.

Of more interest for our present purposes, however, are the undisputed facts concerning these contacts. In the affidavits of its own top officers, Reichhold recites that the procedures for contacting the class members were developed "after consulting with counsel," and that they included explanation of the class notice and providing an additional copy thereof, reminders of the need to affirmatively opt out if the class member wished to avoid being included in the class, advice that evidentiary proof of claim would be required in order to recover, and advice that a class member who failed to opt out might be subject to discovery and other legal procedures. By explicit plan, the contacts were independent of any regular business contacts.

DR 7–104 of the Code provides as follows:

"(A) During the course of his representation of a client a lawyer shall not:

(1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.

(2) Give advice to a person who is not represented by a lawyer, other than the advice to secure counsel, if the interests of such person are or have a reasonable possibility of being in conflict with the interests of his client."

During the time between the institution of a class action and the close of the opt-out period, the status of plaintiffs' counsel in relation to the class members cannot be stated with precision. While class counsel clearly have the duty to represent the interests of the absent class members, it would also appear that contact initiated by class counsel prior to the close of the opt-out period would be unethical as direct solicitation of clients, if the purpose or predictable effect of the contact is to discourage a decision to opt out of the class. Thus, the peculiar status of the class member during this period of time may place additional burdens on class counsel: For purposes of the obligation to avoid compromising the rights of the class members, class counsel must treat them as clients; for purposes of the obligation to avoid unethical solicitation, class counsel must treat the class members as non-clients.

■ However, we cannot conclude that the corollary of this peculiar circumstance is that the class counsel's adversary has diminished responsibilities. While it is technically correct that a class member does not abandon its claim by opting out of the class, it is beyond cavil that it is in defendants' interest for class members to elect to remove themselves from the action. Reading DR 7–104 as a whole, we believe the implication is unavoidable that defendants' counsel must treat plaintiff class members as represented by counsel, and must conduct themselves in accordance with both sections of DR 7–104.

In this type of case, both sides are subject to tremendous pressure to step over the thin line between vigorous advocacy and overreaching. It is essential that the class members' decision to participate or to withdraw be made on the basis of independent analysis of its own self-interest. It is the responsibility of the Court as a neutral arbiter, and of the attorneys in their adversary capacity, to insure this type of free and unfettered decision.

The mechanism selected for accomplishing this is the class notice, which is designed to present the relevant facts in an unbiased format. The process of creating such a notice was, in this case, a tedious and painstaking one, requiring much discussion among all parties and the Court. A bilateral committee of counsel was established to field any questions class members might have.

It must be noted that defendants vigorously campaigned to have included in the notice the warning that class members might be subject to discovery or other legal procedures. After careful consideration of the arguments of the parties, this provision was rejected by the Court. Thus, it is particularly disturbing to see that in the course of the Reichhold contacts of class members, the copy of the class notice was presented along with the oral legal advice which was specifically omitted from the notice prepared by the Court.

■ It is undisputed that counsel did not personally contact any class member. Nei-ther can we conclude that counsel instructed the corporate officers to begin this educational campaign. However, we believe the circumstantial indications are clear that counsel had full knowledge of their client's intention to attempt to sabotage the class notice, and, in derogation of their duty as officers of the Court, they did not advise against the course of action.

There is no First Amendment bar to an injunction under such circumstances. The Court's decisions in *In re Primus*, 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417 and *Ohralik v. Ohio State Bar Association*, 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978) are an enlightening comparison. In the *Primus* case, application of the Code's provisions prohibiting solicitation was seen to violate the First Amendment because of the need to protect political expression and civil rights. In *Ohralik*, enforcement of the identical provision was permissible because the contact was for pecuniary gain, and there was no hint of advancement of beliefs and ideas. Neither do we find in the present situation any hint of advancement of political beliefs and ideas, and we find that the contacts were made solely to protect pecuniary interests. While *Ohralik* and *Primus* dealt with a different provision of the Code, the reasoning as it regards the First Amendment is equally applicable to the present cases.

*Bernard v. Gulf Oil, supra,* held that prior restraints were justifiable in exceptional circumstances and by a showing of direct, immediate and irreparable harm. We now find such circumstances to exist. Given the manner in which this conflict arose, we can no longer logically distinguish between Reichhold and its counsel with regard to contacts of class members.

■ We must also consider the fact that Reichhold's contacts appear to have been quite effective, since an extraordinary percentage of the opt-outs are Reichhold customers. Since we cannot say that these class members made a free and unfettered decision, we must devise a remedy which can restore to these class members the op-

portunity to make the same type of independent decision that other class members have been able to make. Accordingly, we believe that those opt-outs who have been contacted by Reichhold must be restored to the class and must be sent a special notice setting forth our finding of impropriety on Reichhold's part. They will then be given a period equal to the original opt-out period within which to make a new decision.

We are not persuaded by the jeremiads of other defendants who argue that this puts them at a disadvantage with respect to those particular class members. As argued by counsel for plaintiffs, if these class members did, in fact, make a free and unfettered decision in choosing to withdraw, then they will do so again. On the other hand, if they were influenced by the improper contacts, and do not choose to opt out when the impact of that taint is diminished, the other defendants will be in no worse position than they would have without the impropriety. No defendant should be permitted to profit from one defendant's impropriety.

An order issuing the injunction and awarding costs and fees has previously entered, and an order directing the mailing of the special notice will enter this day.