Lynne WANG, Yu Fang Ines Kai, and Hui Jung Pao, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

CHINESE DAILY NEWS, INC., and Does 1–10, et al., Defendants.

No. CV 04–1498CBM(JWJX).

United States District Court, C.D. California, Western Division.

June 7, 2006.

486

Della Bahan, Peter Bibring, Bahan & Associates, Pasadena, CA, for Plaintiffs.

Steven D. Atkinson, Mark T. Palin, Scott K. Dauscher, Atkinson, Andelson, Loya, Ruud & Romo, Cerritos, CA, for Defendants.

## ORDER GRANTING PLAINTIFFS' MOTION TO INVALIDATE OPT–OUTS, FOR POST–JUDGMENT CURATIVE NOTICE, AND TO RESTRICT DEFENDANTS' COMMUNICATION WITH THE CLASS

MARSHALL, District Judge.

The matter before the Court, the Honorable Consuelo B. Marshall, Judge, presiding, is Plaintiffs' Motion to Invalidate Opt-outs, for Post–Judgment Curative Notice, and to Restrict Defendants' Communication with the Class and the parties' evidentiary objections to evidence submitted by both sides.

## JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND & PROCEDURAL HISTORY

Plaintiffs allege multiple labor violations by Defendants, pursuant to the Fair Labor Standards Act ("FLSA"), the California Business and Professions Code § 17200 *et seq.* and the California Labor Code. On January 20, 2005, the Court issued an amended order granting Plaintiffs' motion for class certification pursuant to Fed.R.Civ.P. 23(b)(2) while directing that notice and an opportunity to opt out be given to class members consistent with Rule 23(c)(2)(B).

On June 27, 2005, the Court issued an order approving class notice. Consistent with the Court's order, Plaintiffs mailed notice to putative class members and Defendants provided notice and opt-out forms in its workplace. A substantial number of opt outs were submitted by employees. Because of circumstances surrounding the opt out peri-od, Plaintiffs have filed the instant motion to invalidate the returned opt outs, to restrict Defendants' communications with the class, and for post-judgment curative notice. An opposition and reply brief were timely filed.

## STANDARD OF LAW

■ Fed.R.Civ.P. 23(d) gives courts the authority to oversee class actions. It provides that "the court may make appropriate orders . . . for the protection of the members of the class or otherwise for the fair conduct of the action [and] . . . imposing conditions on the representative parties . . . ." Fed. R.Civ.P. 23(d); *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 103, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). Courts may invalidate opt-outs, restrict parties' contact with the class, and issue curative notice. *See, e.g., Kleiner v. First National Bank of Atlanta,* 751 F.2d 1193, 1202 (11th Cir.1985).

## DISCUSSION

The class in this action is comprised of former and current non-exempt employees of Defendant Chinese Daily News ("CDN"). The opt out period overlapped with a contentious union election. Decl. of Jeffrey Sun ¶ 9; Decl of Lynne Wang ¶ 4. In their efforts to oppose unionization, CDN management held mandatory meetings where CDN warned that unions would be divisive, cost the employees money, and that the unions wanted to kill the newspaper. Sun Decl. ¶ 9; Wang Decl. ¶ 8. It was in that environment that CDN placed the opt out forms on a table in the workplace. Sun Decl. ¶ 10. During at least some portion of the opt out period, someone placed a large sign over the table which stated in Chinese, "Don't Tear the Company Apart! Don't Act Against Each Other!" *Id.* Additionally, Lynne Wang, one of the strong supporters of the unionizing effort and the lawsuit was terminated in the middle of the opt out period, six days after her second day of deposition in this suit. Wang Decl. ¶¶ 5, 8.[1]

---

**1.** Defendants have submitted the declarations of four employees, Guangren Bao, Lily Chueh, Tsai Gen Lan, and Mary Tam, contradicting the Sun and Wang declarations. However, in accor-dance with this Court's order striking the declaration of Grant Wu and other similarly situated individuals, the declarations are stricken because the four employees are represented members of

488

In addition, Jeffrey Sun, a CDN delivery truck driver was approached by CDN management about his involvement in this lawsuit as well as charges Sun had filed with the NLRB. Sun Decl. ¶ 17. Sun's supervisor told Sun that if he would drop out of the suit the supervisor would arrange for Sun to meet with CDN President Guo. *Id.* The supervisor also made a veiled threat if Sun continued with the suit, saying that it would be a big loss to Sun if he were to lose his job in light of his fifteen years with the company and his youth. *Id.* The supervisor also rhetorically asked Sun if he believed that his boss would not seek revenge, which Sun interpreted to mean that retaliation would be sought for participation in the lawsuit. *Id.*

The parties agree that at least 155 opt outs were filed with the Court. Decl. of Maria Stroud ¶ 4; Decl. of Scott Dauscher ¶ 7. Accordingly, depending on the total size of the putative class (Plaintiffs calculate 205 members, Stroud Decl. ¶ 4, Defendants calculate 196, Dauscher Decl. ¶ 7), the percentage of the class that opted out was between 75 and 80 percent. This percentage of opt outs is in stark contrast with the opt out rate observed in the typical class action.

Joseph Fisher, president of the Notice Company, has worked for over a decade assisting attorneys with class action notice and claims administration. Decl. of Joseph Fisher ¶ 1. In his experience, opt out rates have never exceeded one percent in cases on which The Notice Company have assisted. *Id.* ¶ 7. Fisher's observations are consistent with the findings of other commentators writing on the subject. *See, e.g.,* Theodore Eisenberg & Geoffrey P. Miller, *The Role of Opt–Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues,* 57 Vand. L.Rev. 1529, 1532–33 (2004)(mean rate approximately 2 percent for employment cases); Barbara J. Rothstein & Thomas E. Willging, *Managing Class Action Litigation: A Pocket Guide for Judges* (2005)(approximately .1 percent for opt outs); Thomas E. Willging, Laura L. Hooper & Robert J. Niemec, *Class Actions and the Rulemaking Process: An Empirical Analysis of Rule 23 to Address the Rulemaking Challenges,* 71

N.Y.U. L.Rev. 74, 134–36 (1996)(median percentage of .1 or .2 percent). It is with this in mind that the Court considers the relief requested by Plaintiffs.

## I. Invalidating the Opt Outs

 A court's authority under Rule 23(d) includes the invalidation of opt outs where the court finds that the opt outs were procured through fraud, duress, or other improper conduct. *See, e.g., Kleiner v. First National Bank of Atlanta,* 751 F.2d 1193, 1202 (11th Cir.1985); *Impervious Paint Indus. v. Ashland Oil,* 508 F.Supp. 720 (D.Ky. 1981); *Georgine v. Amchem,* 160 F.R.D. 478 (E.D.Pa.1995). Courts need to ensure that individual decisions to opt out are independent and free from coercion. *Manual for Complex Litigation,* Fourth § 21.33 (2004). It is obviously in defendants' interest to diminish the size of the class and thus the range of liability by soliciting opt out requests. *Kleiner,* 751 F.2d at 1202. The danger of improper tampering is only enhanced when, as here, the class and the class opponent are involved in an ongoing business relationship. *Id.* Indeed, the relationship at issue in *Kleiner* was between a bank and its borrowers; here the relationship is even more potentially coercive where Defendants are the individuals' employers and there is evidence that implicit and explicit threats were made linking participation in the lawsuit with job security. *See, e.g.,* Sun Decl. ¶ 17.

 Where there is unsupervised, unilateral communications with the putative class members, there is a particular risk of the sabotage of informed and independent decision-making. *Kleiner,* 751 F.2d at 1203. There is evidence that individuals picking up the opt out forms were exposed to a large sign in Chinese reading "Don't Tear the Company Apart! Don't Act Against Each Other!" Sun Decl. ¶ 10. Although Defendants deny putting the sign up, the danger that the sign created a coercive environment in which employees felt obligated to opt out nonetheless exists whoever put up the sign. In addition, the aggressive anti-union cam-

the class, notwithstanding their attempts to opt

out of the monetary relief portion of the suit.

paign waged by Defendants against many of the same employees who supported this lawsuit, the termination of an employee who supported this suit days after she was deposed, and the exceedingly high opt out rate are all strong evidence that decisions to opt out were not made independently, but rather were the product of a coercive environment.

Defendants argue that Plaintiffs' inability to submit more declarations from employees undercuts Plaintiffs' interpretation of the events surrounding the opt outs. However, in light of the nature of the threats made against employees who participated in the lawsuit as well as the workplace environment at the time of the union campaign and the opt out period, the lack of declarations provided by current employees is not surprising—indeed, comparing the opt out rates of current and former CDN employees further supports the notion that the coercive workplace environment explains the lack of declarations. Current CDN employees opted out of the class at an almost 90 percent rate whereas former employees opted out at a rate of approximately 25 percent.

■ Based on the foregoing evidence, the Court finds that the opt outs submitted in this lawsuit were the product of a coercive environment that pressured employees to opt out lest they risk losing their jobs. As a result of the improper conduct and duress facing employees in the workplace, and in light of the ongoing employer-employee relationship between the class and Defendants, the Court finds that the opt outs were not the product of independent decision-making. Accordingly, pursuant to the Court's authority under Rule 23(d), the Court GRANTS Plaintiffs' motion to invalidate the opt outs submitted by class members.

## II. Post–Judgment Curative Notice

■ Plaintiffs request the Court issue a curative notice to individuals who opted out informing them that they are still members of the class. In most cases, upon invalidation of opt outs, courts order a new opt out period, issue new opt out notices, and individuals are given a second opportunity to opt out without the influence of the offending party. However, Plaintiffs request the Court issue a curative notice and an opportunity to opt out post-determination of liability, essentially requesting that the Court proceed with the trial as scheduled. While some courts have permitted post-judgment notice, it has usually taken place after a settlement or the granting of summary judgment. *See, e.g., Macarz v. Transworld Systems Inc.,* 201 F.R.D. 54 (D.Conn.2001); *In re Nissan Motor Corp.,* 552 F.2d 1088 (5th Cir.1977). A second period would require the approval of a curative notice and new opt out forms, the use of some method other than the workplace, and time for the employees to return the opt out notices. The process would require the continuation of the trial. Additionally, the Court currently has pending before it cross-motions for summary judgment that may resolve large portions of the lawsuit. Depending on the Court's ruling on the motions, there may not be any time for pre-judgment notice.

More troubling is the issue of whether putative class members will be able to make an independent and uncoerced decision. Based on the Court's previous findings, it is doubtful that a second opt out period can remedy the damage that has already been done. Even were the Court to order that opt out forms be mailed directly to employees' homes along with a curative notice about the Court's findings or, alternatively, were the Court to order all employees to attend a court hearing during which the Court could instruct the employees about their rights in the class action, the Court is not convinced that these options could overcome whatever the employees had already been told. Ultimately, when weighing threats to job security against speculative economic recovery, many employees might choose to opt out for fear for their jobs rather than making an independent choice.

Accordingly, the Court GRANTS Plaintiffs' motion for post-judgment notice and opt out period. When, and if, liability is resolved in favor of Plaintiffs, the parties and the Court will revisit the content of any opt out notice and the procedure by which individuals will be allowed to opt out.

## III. Restriction of Defendants' Communication With the Class

 Plaintiffs also seek an order restricting the communication between Defendants and class members. Rule 23(d) grants courts the authority to restrict such communication in order to ensure the fairness of the litigation. *See Gulf Oil Co.*, 452 U.S. at 101–02, 101 S.Ct. 2193; *Kleiner*, 751 F.2d at 1202. The Supreme Court, in *Gulf Oil Co.*, held that "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for limitation and the potential interference with rights of parties." 452 U.S. at 101, 101 S.Ct. 2193. However, unlike here, *Gulf Oil Co.* dealt with pre-certification communication. Once a class has been certified, "an order limiting communications regarding ongoing litigation between a class and class opponents will satisfy first amendment concerns if it is grounded in good cause and issued with a 'heightened sensitivity' for first amendment concerns." *Kleiner*, 751 F.2d at 1205–06.

 In determining the existence of good cause, four criteria must be considered: (1) the severity and the likelihood of the perceived harm; (2) the precision with which the order is drawn; (3) the availability of a less onerous alternative; and (4) the duration of the order. *Id.* It is unnecessary for a court "to issue particularized findings of abusive conduct when a given form of speech is inherently conducive to overreaching and duress." *Id.* at 1206. Unsupervised communications urging individuals to opt out, by their very nature, are likely to produce distorted statements on the one hand and the coercion of individuals on the other. *Id.* This is especially true where the parties are engaged in an ongoing employer-employee relationship. However, in addition to the inherent coerciveness of the communication, this Court has found abusive conduct to have occurred in the context of the opt out period. Finding the harm arising as a result of the communication to be likely and severe, and finding no less onerous alternative, the Court GRANTS Plaintiffs' motion for an order restricting Defendants' communication with the class. The Court ORDERS Plaintiff to submit a proposed order restricting Defendants' communications with the class regarding the ongoing litigation.

## IV. Evidentiary Objections

### A. Defendants' Objections

#### 1. Declaration Submitted by Lynne Wang

 Defendants object that Wang lacks personal knowledge and that her statements contain inadmissible hearsay. Wang was on medical leave during the opt out period and therefore many of her statements constitute hearsay and lack personal knowledge. Defendants also object that Wang's statements regarding the unionizing effort are irrelevant, however, the statements are relevant to show CDN's reaction to that campaign as well as to the lawsuit, as many of the same employees supported both efforts. Accordingly, the Court SUSTAINS the objections to ¶¶ 3, 5 (pg.2:26–27), 9, 11–16 and OVERRULES the objections as to the rest.

#### 2. Declaration Submitted by Jeffrey Sun

 Defendants object that Sun lacks personal knowledge and that his statements contain impermissible hearsay. Several of his statements attempt to relate what others told him. To the extent that the statements of third parties are made by party-opponents, the statements are admissible. Accordingly, the Court SUSTAINS the objections to ¶¶ 4–7, 11–16, and 18 and OVERRULES the objections as to the rest.

#### 3. Declaration Submitted by Maria Stroud

 Defendants object that Stroud lacks personal knowledge, that her statements are irrelevant, and that they contain hearsay. Stroud's declaration merely describes the opt out process and reports the number of people that have opted out along with the numbers of people remaining in the class. Accordingly, the Court OVERRULES the objections.

### 4. Declaration Submitted by Joseph Fisher

██ Defendants object that Fisher lacks personal knowledge, that his statements are irrelevant and contain hearsay. Fisher works for a company that administers notice and claims administration for class actions. His testimony relates to the typical rates of opt out seen in class actions. To the extent that his statements relate what Plaintiffs' counsel told him about the numbers of opt outs, the statements are only being provided to demonstrate the basis of his calculations. Accordingly, the Court OVERRULES the objections.

### B. Plaintiffs' Objections

██ Plaintiffs object to the submission of declarations of four employees. Plaintiffs point out that the Court has before it a motion to strike the declaration of a similarly situated employee who has opted out of the monetary portion of the lawsuit. Pursuant to the Court's order regarding that motion, Plaintiffs' objections are SUSTAINED and the declarations of the four employees are STRICKEN because the employees are represented members of the class for purposes of injunctive and declaratory relief.

### CONCLUSION

Having found that the opt out period was rife with instances of coercive conduct, including threats to employees' jobs, termination of an employee supporting the litigation, the posting of signs urging individuals not to tear the company apart, and the abnormally high rate of opt outs, the Court GRANTS Plaintiffs' motion to invalidate the opt outs, issue post-judgment curative notice, and to restrict Defendants' communications with class members.

IT IS SO ORDERED.